Nicholas Fortuna, Esq. (NF-9191)
ALLYN & FORTUNA, LLP
200 Madison Avenue, 5th Floor
New York, New York 10016
Telephone : (212) 213-8844
Facsimile:  (212) 213-3318
*nfortuna@allynfortuna.com*

Mark L. Callister, Esq. (Admitted Pro Hac Vice)
CALLISTER NEBEKER & McCULLOUGH
Zions Bank Building, Suite 900
10 East South Temple
Salt Lake City, Utah 84133
Telephone:  (801) 530-7300
Facsimile:  (801) 364-9127
*mcallister@cnmlaw.com*
**Attorneys for Defendant D&B Towers, LLC**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

C. ROBERT ALLEN, III, by LUKE ALLEN, as Guardian for the Property Management of C. Robert Allen, III,

               Plaintiff,

- against -

CHRISTOPHER DEVINE, BRUCE BUZIL, LAKESHORE MEDIA, LLC, MILLCREEK BROADCASTING LLC, COLLEGE CREEK MEDIA LLC, MARATHON MEDIA GROUP, LLC, 3 POINT MEDIA – SALT LAKE CITY, LLC, 3 POINT MEDIA DELTA, LLC, 3 POINT MEDIA – UTAH, LLC, 3 POINT MEDIA – FRANKLIN, LLC, 3 POINT MEDIA – PRESCOTT VALLEY, LLC, 3 POINT MEDIA – COALVILLE, LLC, 3 POINT MEDIA – ARIZONA, LLC, 3 POINT MEDIA – FLORIDA, LLC, 3 POINT MEDIA – KANSAS, LLC, 3 POINT MEDIA – OGDEN, LLC, 3 POINT MEDIA – SAN FRANCISCO, LLC, MIDVALLEY RADIO PARTNERS, LLC, D&B TOWERS, LLC, SUPERIOR BROADCASTING OF NEVADA, LLC, SUPERIOR BROADCASTING OF DENVER, LLC, WACKENBURG ASSOCIATES, LLC, PORTLAND BROADCASTING LLC, DESERT SKY MEDIA LLC, SKY MEDIA LLC, and John Does 1-50,

               Defendants.

-------------------------------------------------------------------------------x

**Case No. 09 Civ. 0668 (ADS) (MLO)**

**MEMORANDUM IN SUPPORT OF DEFENDANT D&B TOWERS, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2), 12(b)(6) AND 9(b)**

519948.1

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS SUPPORTING MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  THIS COURT LACKS PERSONAL JURISDICTION OVER
    DEFENDANT D&B TOWERS, LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  THE TRANSACTION OF BUSINESS PRONG OF SECTION 302(a)(1)  . . . . 4

    B.  COMMISSION OF TORTIOUS ACT WITHIN THE STATE PRONG OF
        SECTION 302(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  COMMISSION OF TORTIOUS ACT OUTSIDE THE STATE PRONG OF
        SECTION 302 (a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.  JURISDICTION BASED ON THE NEW YORK ACTS OF THE ALLEGED
        CO-CONSPIRATORS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. PERSONAL JURISDICTION OVER D&B TOWERS IS NOT APPROPRIATE
    UNDER THE FEDERAL RICO STATUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. THE EXERCISE OF JURISDICTION WOULD VIOLATE THE DUE PROCESS
     CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES
     CONSTITUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD
    FRAUD WITH SUFFICIENT PARTICULARITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Beckett v. Prudential Ins. Co.*, 893 F. Supp. 234 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174 85 L.Ed.2d 528 (1985) . . . . . . . 5

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1985) . . . . . . . . . . . . 10

*CBC Wood Products v. LMD Integrated Logistics Services, Inc.*, 455 F.Supp.2d 218
    (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Century Oil Tool, Inc. v. Prod. Specialties, Inc.*, 737 F.2d 1316 (5th Cir. 1984) . . . . . . . . . . . . . 9

*Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260 (S.D.N.Y. 1991) . . . . . . . . 8

*Daly v. Castro Llanes*, 30 F.Supp.2d 407 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*European Micro Holdings, Inc.*, 281 F.Supp.2d 629 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . 8

*Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . 7

*Madanes v. Madanes*, 981 F.Supp. 241 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir. 1952),
    cert. denied, 345 U.S. 925 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65 (2nd Cir. 1998) . . . . . . 10

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sunward Elec., Inc. v McDonald*, 362 F.3d 17 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Team Obsolete Ltd. v. AHRMA Ltd.*, 2002 WL 719471 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Telebyte, Inc. v. Kendaco, Inc.*, 105 F.Supp.2d 131 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . 6

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 3, 4
*World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286 (1980) . . . . . . . . . . . . . . . . . . . . . . 12

**STATE CASES**

*Bereswill v. Yablon*, 6 N.Y.2d 301, 160 N.E.2d 531, 189 N.Y.S.2d 661 (1959) . . . . . . . . . . . . 12

*Bramwell v. Tucker*, 107 A.D.2d 731, 484 N.Y.S.2d 92 (2d Dept. 1985) . . . . . . . . . . . . . . . . . . 6

*Fantis Foods v. Standard Importing Co.*, 49 N.Y.2d 317, 425 N.Y.S.2d 783,
 402 N.E.2d 122 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Kramer v. Hotel Los Monteros*, 57 A.D.2d 756, 394 N.Y.S.2d 415 (1st Dept. 1977) . . . . . . . . 10

*McGowan v. Smith*, 52 N.Y.2d 268 N.Y.W.2d 643, 419 N.E.2d 321 (1981) . . . . . . . . . . . . . . . 9

*Steward v. World-wide Automobiles Corp.*, 20 Misc. 2d 188, 189 NYS 2d. 540 (1959) . . . . . . . 8

**FEDERAL STATUTES**

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATE STATUTES**

N.Y.C.P.L.R. Section 302(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL RULES**

F.R.C.P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

F.R.C.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

F.R.C.P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 13

Defendant D&B Towers, LLC, now known as Humpy Peak Tower, LLC, a Utah limited liability company ("D&B Towers"), hereby submits the following Memorandum in Support of its Motion to Dismiss.

## INTRODUCTION

Plaintiff alleges that Defendants Christopher Devine ("Devine") and Bruce Buzil ("Buzil") fraudulently induced him to invest millions of dollars in Superior Broadcasting Company, Inc. ("Superior") and then "filtered" those funds to other entities that they owned and controlled, including Defendant D&B Towers. But D&B Towers itself is also a victim of Defendants Devine and Buzil. The current owner of D&B Towers, Simmons Media Group, LLC ("Simmons Media"), made a loan of more than $12 million to Defendant Lakeshore Media (an Illinois company owned and controlled by those Defendants) that is in default. D&B Towers believes that at least $600,000 of the loan proceeds were wrongfully transferred to Superior, in violation of the Loan Agreement. Thus, under the same legal theories asserted by Plaintiff against D&B Towers in this action, Simmons Media would have a claim against Superior (the company controlled by Plaintiff) for the wrongfully diverted loan proceeds. *Leifson Affidavit at ¶¶ 24-26.* That issue, however, cannot be resolved in this forum because D&B Towers is a Utah limited liability company that is not subject to the jurisdiction of a New York court.

## FACTS SUPPORTING MOTION TO DISMISS

Defendant D&B Towers is a Utah limited liability company that was initially formed on March 1, 2004 under Illinois law by Defendants Devine and Buzil. The original members of D&B Towers were Defendant Devine, who owned a 60 percent membership interest, and Defendant Buzil,

1

who owned a 40 percent membership interest. Devine and Buzil were also the managers of D&B Towers. *Leifson Affidavit at ¶ 2*.

Simmons Media acquired a 50 percent interest in D&B on March 31, 2005, for the sum of $1,193.315.00. *Id. at ¶ 7*. On or about November 21, 2008, Simmons Media acquired the remaining interest of Devine and Buzil by foreclosing on their interests pursuant to a properly acquired and perfected security interest. *Id. at ¶¶ 17-18*.

D&B Towers, the Utah LLC, does not have a New York office or any property in New York. Nor does D&B have New York bank accounts, employees in New York, or a mailing address, telephone line or post office box in that state. D&B Towers is not registered to do business in New York and does not pay New York income or property taxes. *Id. at ¶¶ 19-20*. While the current owners were not involved in the management of D&B Towers when it was controlled by Defendants Devine and Buzil, a review of the documents acquired when Simmons Media assumed control of that entity reveals that D&B Towers never transacted business in New York, maintained New York bank accounts, a New York mailing address, post office box or telephone line. *Id*.

D&B Towers does not regularly solicit business or engage in any other persistent course of conduct in New York. D&B Towers does not derive substantial revenue from goods used or consumed or services rendered in that state. *Id. at ¶¶ 21-23*. D&B Towers derives its revenues from the lease of the Humpy Peak radio tower in Utah to local radio stations operating in Utah. D&B Towers does not derive substantial revenue from interstate or international commerce. *Id.*

The current owner of D&B Towers is not aware of any fund transfers from accounts in New York to the D&B Towers accounts in Illinois or Utah. *[Id. at ¶ 17](Id. at ¶ 17)*. In fact, Plaintiff alleges that all

wires by Allen from his account in New York were sent to Superior Broadcasting Company, Inc.'s account located in Illinois. *Complaint at ¶ 9.*

# I.
# THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT D&B TOWERS, LLC

In a motion to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Personal jurisdiction over a non-resident defendant in a federal diversity action is determined by the law of the forum state. *See Whitaker*, 261 F.3d at 208. Therefore, the court must look to New York's personal jurisdiction statutes, namely the New York Civil Practice Law and Rules ("CPLR"), Sections 301 and 302, to determine whether the Plaintiff has made a prima facie showing of personal jurisdiction over the out-of-state Defendant. Then, if jurisdiction is found, the Court must determine whether such exercise of jurisdiction under state law satisfies the federal due process requirements of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

In the Complaint, Plaintiff alleges that Defendants Devine and Buzil persuaded Plaintiff (a New York resident) to wire money to Superior Broadcasting Company, Inc. (a Delaware company), "that they falsely described as owning multiple radio stations when in fact, Superior did not own and never purchased a single station." *Complaint at ¶¶ 5-6.* Devine and Buzil allegedly "filtered money to other entities within a web of limited liability companies created and controlled by them (the 'Devine/Buzil LLCs')." *Id.* The fraud was "furthered by numerous wires made by Allen from his

3

accounts in New York to Superior's accounts in Illinois." *Id. at ¶ 9.* The conspiracy was carried out by means of fraudulent acts by Devine and Buzil, including acts done on behalf of the Devine/Buzil LLCs, which were done pursuant to and in furtherance of the common understanding and agreement. *Id. at ¶ 203.* In addition to that conclusory allegation of conspiracy (Count Three), Plaintiff generally alleges that the Devine/Buzil LLCs tortiously converted Plaintiff's funds because they were each "controlled" by those Defendants and "thus . . . knew that they were receiving funds that had been converted from Allen." *Id. at 208.* Based on that alleged conversion, Plaintiff asserts claims for unjust enrichment and constructive trust (Counts Five and Six) against the Devine/Buzil LLCs.

Plaintiff alleges that this Court has personal jurisdiction over each of the Defendants under CPLR § 302 on the following grounds: (1) that "each Defendant engaged in a commercial transaction taking place at least in part in New York." *Complaint at ¶ 20,* citing CPLR § 302(a)(1); (2) that each Defendant "committed a tort in New York" *Id.*, citing CPLR § 302(a)(2); and (3) that "to the extent that any of the Defendants' tortious acts were committed outside of New York, each Defendant knew that his acts would have consequences in New York and each Defendant derives substantial revenue from interstate commerce." *Id.*, citing CPLR § 302(a)(3). Plaintiff also alleges jurisdiction based on the Federal RICO Statute, 28 U.S.C. § 1311. *Id. at ¶ 18.* D&B Towers vigorously disputes these allegations which are insufficient for purposes of establishing jurisdiction over D&B Towers in this forum.

A.     THE TRANSACTION OF BUSINESS PRONG OF SECTION 302(a)(1)

Section 302(a)(1) authorizes personal jurisdiction in New York over any defendant that "transacts any business within the state or contracts anywhere to supply goods or services in the

4

state." To determine whether a party has "transacted business" within the meaning of Section 302(a)(1), courts consider, among other things, the following factors: (1) whether the defendant has an ongoing contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (3) whether the contract is to be performed in New York; (4) whether the contract requires notices and payments to be sent to New York; and (5) whether the contract contains a New York choice of law clause. *See Sunward Elec., Inc. v McDonald,* 362 F.3d 17, 22-23 (2d Cir. 2004) (citing *Agency Rent A Car*, 98 F.3d at 29). No single factor is dispositive. Rather, a finding of personal jurisdiction must be based upon the totality of the circumstances. *Agency Rent A Car*, 98 F.3d at 29.

Here, there is no allegation that Defendant D&B Towers entered into any agreement with Plaintiff, let alone a contract negotiated, executed or performed in New York. When Defendant Devine allegedly induced Plaintiff to wire funds to Superior in Illinois, there is no allegation that he was acting as an agent of D&B Towers or that he ever solicited Allen for funds on behalf of D&B Towers. In fact, the Complaint alleges that Devine "solicited money from Allen for a company named Superior Broadcasting Company Inc.", in his role as president of that company and a member of the Board of Directors. *Complaint at ¶ 68.* Accordingly, jurisdiction over D&B Towers in this Court is not supported by the transacting business prong of Section 302. *See also CBC Wood Products v. LMD Integrated Logistics Services, Inc.*, 455 F.Supp.2d 218 (E.D.N.Y. 2006).

5

B.  **COMMISSION OF TORTIOUS ACT WITHIN THE STATE PRONG OF SECTION 302(a)(2).**

Section 302(a)(2) authorizes the Courts to exercise personal jurisdiction over a non-domiciliary who "commits a tortious act within the state." N.Y.C.P.L.R. Section 302(a)(2). This provision "reaches only tortious acts performed by a defendant who is physically present in New York when he performed the wrongful act." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997) (citing *Feathers v. McLucas*, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)); *Telebyte, Inc. v. Kendaco, Inc.*, 105 F.Supp.2d 131 (E.D.N.Y. 2000).

Here, there is no allegation that D&B Towers or its agents were in New York when the alleged tortious act of conversion occurred. When Devine allegedly solicited funds from Allen in New York he was acting as an agent of Superior. *Complaint at ¶ 68*. The funds were transferred by "Allen from his accounts in New York to Superior's accounts in Illinois." *Complaint at ¶ 9*. The D&B Towers account into which the allegedly fraudulently procured funds were transferred from Superior was also located in Illinois. *Id.* Because that is where D&B Towers first assumed control over such funds, the alleged wrongful act by D&B Towers could not have taken place in New York.

C.  **COMMISSION OF TORTIOUS ACT OUTSIDE THE STATE PRONG OF SECTION 302 (a)(3).**

CPLR §302(a)(3) extends jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to persons or property within the state," if the defendant engages in a certain level of business activity in the state. *See Bensusan*, 126 F.3d at 28, 29; *Diskin*, 538 F.Supp. at 880. The thrust of the statute is directed to the "imparting of the original injury within the State of New York and not the resultant damage, in order that jurisdiction might be effectuated." *Bramwell v. Tucker*, 107 A.D.2d 731, 733, 484 N.Y.S.2d 92 (2d Dept. 1985), quoting *Kramer v.*

*Hotel Los Monteros*, 57 A.D.2d 756, 757, 394 N.Y.S.2d 415 (1st Dept. 1977); *see also Diskin*, 538 F.Supp. at 879 (the statute's "essential predicate is that the injury giving rise to the plaintiffs' claim occur within the state."). The mere residence or domicile in New York of an injured plaintiff does not constitute injury within the state for the purpose of establishing jurisdiction under CPLR 302(a)(3) where the injury occurred elsewhere. *Bramwell*, 107 A.D.2d at 732-33, 484 N.Y.S.2d at 93, citing *McGowan v. Smith*, 52 N.Y.2d 268, 274-75, 437 N.Y.W.2d 643, 419 N.E.2d 321 (1981), and *Fantis Foods v. Standard Importing Co.*, 49 N.Y.2d 317, 326-327, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980).

Here, the alleged injury caused by D&B Towers could only have occurred in Illinois where its bank account was located. The transfers were made (the alleged conversion of Plaintiff's funds) from Superior's account in Illinois, with no nexus to New York. Moreover, even if Plaintiff could allege a harm in New York resulting from D&B's alleged conversion of funds in Illinois, jurisdiction would still not lie under Section 302(a)(3) because D&B Towers does not "derive substantial revenue from interstate commerce." *Leifson Aff. at ¶ 17*.

D.  JURISDICTION BASED ON THE NEW YORK ACTS OF THE ALLEGED CO-CONSPIRATORS.

Under New York law, "the acts of a co-conspirator within the state may be attributed to an out-of-state defendant for the purposes of obtaining jurisdiction." *Madanes v. Madanes*, 981 F.Supp. 241 (S.D.N.Y. 1997) (citing *Sierra Rutile Ltd. v. Katz*, No. 90 CIV. 4913, 1992 WL 236208, at *8 (S.D.N.Y. Sept. 8, 1992)). However, "the bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of Section 302(a)(2)." *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975). Before long-arm jurisdiction can be exercised over an out-of-state co-conspirator, the plaintiff must demonstrate (1) a prima facie factual showing of

7

a conspiracy to commit a tort in New York, and (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy. *Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1266 (S.D.N.Y. 1991).

A claim for conspiracy to commit fraud is subject to the strict pleading requirements of F.R.C.P. 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). The gist of Plaintiff's conclusory conspiracy claim is that D&B Towers allegedly conspired with its owners, Devine and Buzil, to receive funds fraudulently procured by Devine and Buzil from Plaintiff. This conclusory allegation of a conspiracy fails to satisfy the pleading requirements of Rule 9(b). The Plaintiff does not identify the specific transfers of funds to D&B Towers, the date on which such transfers allegedly occurred, or specific facts supporting the allegation that funds transferred to D&B Towers were the same funds that Plaintiff claims were fraudulently procured. Such facts are necessary to state a claim for fraudulent conspiracy in this case where the individual defendants who allegedly made the transfers to D&B Towers received funds from sources other than Plaintiff, including a $12 million loan from the current owner of D&B Towers that is in default. At a minimum, Plaintiff should be required to plead specific facts supporting his claim that the funds allegedly transferred of funds from Superior's bank account in Illinois to the D&B Towers' bank account in that state belonged to Plaintiff, and not some other party like Simmons Media, who loaned money to an entity controlled by the individual defendants. On that basis alone, the Complaint should be dismissed. *See e.g.*, *European Micro Holdings, Inc.*, 281 F.Supp.2d 629 (E.D.N.Y. 2003) (dismissing fraudulent conveyance claim for failure to satisfy the pleading requirement of Rule 9(b) where complaint failed to identify the assets which were allegedly transferred or the dates of the transfers).

Plaintiff's conclusory conspiracy claim is also defective as a matter of law because it appears to be based on an alleged conspiracy between Defendant Devine, the individual, and Devine in his role as owner and manager of D&B Towers. Under New York law, a corporation and its owners, employees and agents are not capable of conspiring with each other. In *Bereswill v. Yablon*, 6 N.Y.2d 301, 160 N.E.2d 531, 189 N.Y.S.2d 661 (1959), the court affirmed the dismissal of a claim that a stockholder conspired with the corporation that he controlled. The court stated, "it is well established that a conspiracy depends upon a combination of two or more persons intentionally participating in the furtherance of a preconceived scheme or design." While it is possible for an individual and a corporation to conspire, "it is basic that the persons and entities must be separate. *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir. 1952), *cert. denied*, 345 U.S. 925." *See also Steward v. World-wide Automobiles Corp.*, 20 Misc. 2d 188, 189 NYS 2d. 540 (1959) (dismissing claim that corporation conspired with its officers on ground that "since the corporation can only act through its duly elected directors or duly appointed officers, the plaintiffs have in effect sought to charge the corporate defendant with conspiring with itself."); *Century Oil Tool, Inc. v. Prod. Specialties, Inc.*, 737 F.2d 1316, 1317 (5th Cir. 1984) (no valid antitrust conspiracy claim where "two corporations wholly owned by three persons who together manage all affairs of the two corporations" allegedly conspired with each other). Here, the allegation that Devine and Buzil owned and controlled the entity (D&B Towers) with which they allegedly conspired (*Complaint, ¶ 6*) precludes Plaintiff from stating a claim for conspiracy under New York law, as well as from obtaining jurisdiction over D&B Towers on that basis.

## II.
## PERSONAL JURISDICTION OVER D&B TOWERS IS NOT APPROPRIATE UNDER THE FEDERAL RICO STATUTE

Plaintiff alleges that "[t]his Court has jurisdiction over this case under 28 U.S.C. § 1331 because it arises under the federal RICO statute". *Complaint at ¶ 18.* The law in this circuit is clear that the RICO statute "does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." *PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65 (2nd Cir. 1998). As stated in *PT United Can*:

> To establish personal jurisdiction over a non-domiciliary defendant under Section 1, plaintiffs must show that (1) the Court has personal jurisdiction as to at least one defendant based on minimum contacts, and (2) "the ends of justice" so require. *Id.* Although the Second Circuit chose not to specify what constitutes "the ends of justice," the Ninth Circuit and other district courts in this Circuit have interpreted the phrase to permit the exercise of "personal jurisdiction if, otherwise, the entire RICO claim could not be tried in one civil action."

*Id.* at 71, citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 539 (9th Cir. 1985); *Daly v. Castro Llanes*, 30 F.Supp.2d 407, 413 (S.D.N.Y. 1998).

Plaintiff cannot assert that this is the only district where the entire RICO claim can be tried in one civil action. As evidenced by Plaintiff's voluntary dismissal of Defendant Buzil, one of the two alleged individual conspirators is not subject to the jurisdiction of this Court. That fact alone mandates the conclusion that "the ends of justice do not require personal jurisdiction over the individual defendants in New York." *PT United Can Co.*, 138 F.3d at 71-72; *Team Obsolete Ltd. v. AHRMA Ltd.*, 2002 WL 719471 at p. 6 (E.D.N.Y. 2002) (holding that jurisdiction over non-resident defendants not proper under RICO statute where plaintiff failed to show that "there is no other district in which the action could be brought.").

Furthermore, "the ends of justice do not require" the exercise of nationwide jurisdiction where the "RICO claim cannot be maintained against" the non-resident defendant. *Team Obsolete*, at p. 6. Here, D&B Towers is not a party to the RICO claims. As in *Team Obsolete*, a non-resident should not be forced to submit to jurisdiction in New York when the claim could be filed in another district and that defendant has not engaged in racketeering activity.

Finally, forcing D&B Towers to litigate this dispute in New York is contrary to the "ends of justice" because the current owner of that entity has also lost millions of dollars to the individual defendants in the form of a $12,000,000.00 loan that is in default. Rather than force D&B Towers to litigate this dispute in a costly and distant forum, the Plaintiff would have been better served to work with D&B Towers' new owners to trace and locate funds that each party paid to Defendants Devine and Buzil. The parties should at least attempt to ascertain whether they are in possession of the other's funds before launching off into costly litigation that will only increase their respective losses. Moreover, Plaintiff's attempt to recover his losses from D&B Towers is misplaced because the major asset of D&B Towers (the Humpy Peak radio tower in Utah) was acquired with the proceeds of a loan from a third party that had nothing to do with the money invested by Plaintiff. Simmons Media (who purchased that loan and the perfected security interest in the radio tower collateral), has a prior interest in the assets of D&B Towers that will take priority over Plaintiff's claim as a judgment creditor. *Id. at ¶¶ 5-6; 13-16.* D&B Towers respectfully submits that Plaintiff has failed to establish that "the ends of justice" require the assertion of jurisdiction over that non-resident entity in New York.

519948.1

## III.
## THE EXERCISE OF JURISDICTION WOULD VIOLATE THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

Plaintiff also cannot establish that the exercise of personal jurisdiction over D&B Towers would comport with the Due Process Clause of the United States Constitution. A court may only exercise jurisdiction over a foreign corporation if there exists minimum contacts between the corporation and the forum state. *See World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Indeed, "a defendant must have certain minimum contacts with the forum state so that the suit does not offend traditional notions of fair play and substantial justice." *Beckett v. Prudential Ins. Co.*, 893 F. Supp. 234, 238 (E.D.N.Y. 1995).

Here, as discussed above, D&B Towers has had no contacts with New York. It is a Utah limited liability company, its offices are in Utah and it operates exclusively in Utah. *Leifson Aff. at ¶¶ 2; 19-29*. D&B Towers does not have a bank account in New York, does not own or lease real property in New York and does not solicit or advertise in New York. *Id.*

Therefore, the exercise of personal jurisdiction in New York, over this defendant, who had no contacts with New York, would offend traditional notions of fair play and substantial justice. Accordingly, the Court should find that there is no personal jurisdiction over D&B Towers and dismiss the Complaint as against it.

## IV.
## THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD FRAUD WITH SUFFICIENT PARTICULARITY

FEDERAL RULE OF CIVIL PROCEDURE 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake [must] be stated with particularity." FED. R. CIV. P. 9(b). In order to satisfy this requirement, the complaint must: "'(1) specify the statements that the

plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent."' *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Where there are multiple defendants, Rule 9(b) requires that the plaintiffs allege facts specifying each defendant's contribution to the fraud. *See DiVittorio*, 822 F.2d at 1247 ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (Citation omitted).

Here, the Complaint fails to inform D&B Towers of the nature of its alleged participation in the fraud. Plaintiff alleges in conclusory fashion that "Devine, Buzil, and the Devine/Buzil LLCs formed a common understanding and agreement to carry out unlawful acts against Allen." *Complaint at ¶ 201*. The conspiracy "was carried out by means of fraudulent acts by Devine and Buzil . . ., including acts done on behalf of the Devine/Buzil LLCs." *Id. at ¶ 203*. Plaintiff does not identify a single fraudulent transfer of funds into the D&B Towers account. There is no allegation of any fraudulent statements made by the individual defendants in their capacity as an officer or agent of D&B Towers, the date and location of such statements or how the statements constitute fraud by D&B Towers. Nor does the Complaint include any allegations of fact supporting Plaintiff's claim that D&B Towers received funds belonging to Plaintiff. The Complaint should be dismissed for failure to satisfy the requirements of Rule 9(b).

## **CONCLUSION**

For the foregoing reasons, Defendant D&B Towers respectfully requests that the claims against it be dismissed pursuant to F.R.C.P. 12(b)(2) for lack of personal jurisdiction. Alternatively,

519948.1

D&B Towers requests that the Complaint be dismissed pursuant to F.R.C.P. 12(b)(6) for failure to plead conspiracy to defraud with sufficient particularity as required by F.R.C.P. 9(b).

Dated this 3rd day of April 2009.

/s/ Mark L. Callister
Mark L. Callister
CALLISTER NEBEKER & McCULLOUGH
10 East South Temple, Suite 900
Salt Lake City, Utah 84133
Telephone: (801) 530-7425
Facsimile: (801) 364-9127
*mcallister@cnmlaw.com*

Nicholas Fortuna, Esq.
ALLYN & FORTUNA, LLP
200 Madison Avenue, 5th Floor
New York, New York 10016
Telephone: (212) 213-8844
Facsimile: (212) 213-3318
*nfortuna@allynfortuna.com*
*Attorneys for Defendant D&B Towers, LLC*

15

519948.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **MEMORANDUM IN SUPPORT OF DEFENDANT D&B TOWERS, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2), 12(b)(6) AND 9(b)** was served by electronic transmission via the U.S. District Court's CM/ECF system, on the 3rd day of April 2009, on the following:

Lawrence T. Gesser, Esq.
Alexandra Wald, Esq.
Nathaniel P.T. Read, Esq.
COHEN & GRESSER, LLP
100 Park Avenue, 23rd Floor
New York New York 10017

Kevin J. O'Conner, Esq.
PECKAR & ABRAMSON, P.C.
41 Madison Avenue
New York, New York 10010

Robert A. Barrer, Esq.
HISCOCK & BARCLAY, LLP
One Park Place
300 South State Street
Syracuse, New York 13202-2078

                                                /s/ Mark L. Callister