Nicholas Fortuna, Esq. (NF-9191)
ALLYN & FORTUNA, LLP
200 Madison Avenue, 5th Floor
New York, New York 10016
Telephone : (212) 213-8844
Facsimile:  (212) 213-3318
*nfortuna@allynfortuna.com*

Mark L. Callister, Esq. (Admitted Pro Hac Vice)
CALLISTER NEBEKER & McCULLOUGH
Zions Bank Building, Suite 900
10 East South Temple
Salt Lake City, Utah 84133
Telephone:  (801) 530-7300
Facsimile:  (801) 364-9127
*mcallister@cnmlaw.com*
**Attorneys for Defendant D&B Towers, LLC**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

| | | |
|---|---|---|
| C. ROBERT ALLEN, III, by LUKE ALLEN, as Guardian for the Property Management of C. Robert Allen, III, | : | |
| Plaintiff, | : | **Case No. 09 Civ. 0668 (ADS) (MLO)** |
| - against - | : | |
| CHRISTOPHER DEVINE, BRUCE BUZIL, LAKESHORE MEDIA, LLC, MILLCREEK BROADCASTING LLC, COLLEGE CREEK MEDIA LLC, MARATHON MEDIA GROUP, LLC, 3 POINT MEDIA – SALT LAKE CITY, LLC, 3 POINT MEDIA DELTA, LLC, 3 POINT MEDIA – UTAH, LLC, 3 POINT MEDIA – FRANKLIN, LLC, 3 POINT MEDIA – PRESCOTT VALLEY, LLC, 3 POINT MEDIA – COALVILLE, LLC, 3 POINT MEDIA – ARIZONA, LLC, 3 POINT MEDIA – FLORIDA, LLC, 3 POINT MEDIA – KANSAS, LLC, 3 POINT MEDIA – OGDEN, LLC, 3 POINT MEDIA – SAN FRANCISCO, LLC, MIDVALLEY RADIO PARTNERS, LLC, D&B TOWERS, LLC, SUPERIOR BROADCASTING OF NEVADA, LLC, SUPERIOR BROADCASTING OF DENVER, LLC, WACKENBURG ASSOCIATES, LLC, PORTLAND BROADCASTING LLC, DESERT SKY MEDIA LLC, SKY MEDIA LLC, and John Does 1-50, | : : : : : : : | **DEFENDANT D&B TOWERS, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| Defendants. | : | |

523328.1

------------------------------------------------------------------------------x

Case 2:09-cv-00668-ETB   Document 44   Filed 05/29/09   Page 2 of 15 PageID #: 637

523328.1

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    THE ACTS OF DEFENDANT DEVINE IN NEW YORK CANNOT
BE ATTRIBUTED TO D&B FOR PURPOSES OF ESTABLISHING
PERSONAL JURISDICTION IN NEW YORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   THE COMPLAINT FAILS TO SATISFY THE HEIGHTENED PLEADING
REQUIREMENTS FOR ESTABLISHING JURISDICTION OVER
AN OUT-OF-STATE DEFENDANT ON THE BASIS OF A
CONSPIRACY CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  JURISDICTION OVER D&B IS INCONSISTENT WITH TRADITIONAL
NOTIONS OF FAIR PLAY AND DUE PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

Beckett v. Prudential Ins. Co., 893 F. Supp. 234 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 8

Cleft of the Rock Foundation v. Wilson, 992 F. Supp. 574 (E.D.N.Y. 1998) . . . . . . . 2, 5, 7, 8, 9

Heinfling v. Colapinto, 946 F. Supp. 260 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 7

Huang v. Sentinel Government Securities, 657 F. Supp. 485 (S.D.N.Y. 1987) . . . . . . . . . . . . . . 7

Karabu Corp. v. Gitner, 16 F. Supp. 2d 319 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc., 26 F. Supp. 2d 593
    (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Singer v. Bell, 599 F. Supp. 350 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**FEDERAL RULES**

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Defendant D&B Towers, LLC, now known as Humpy Peak Tower, LLC, a Utah limited liability company ("D&B"), respectfully submits this Memorandum of Law in reply to the Plaintiff's Opposition to D&B's Motion to Dismiss for lack of personal jurisdiction.

## INTRODUCTION

Plaintiff is attempting to impose New York jurisdiction on a Utah limited liability company with no contacts in this state based solely on the conclusory allegation that "as soon as [Plaintiff's fraudulently procured] money was deposited to Superior, Devine, who was Superior's President, would transfer the money to another of the many LLC's that he and Buzil controlled." Complaint, ¶ 7. Plaintiff concedes that he assumed control over Superior and its records in November 2007 (Complaint at ¶¶ 160-61) yet he fails to allege a single transfer of his fraudulently procured funds from that entity to D&B. Instead, Plaintiff asks the Court to assume that $2.23 million of his funds were "invested" in D&B because Defendant Devine executed a "Non Recourse Note" offering to pay Superior up to $2,236,532 of the proceeds of the sale of his interest in D&B. Wald Decl. at ¶ 9.

There is not a single allegation of fact or a shred of evidence that Plaintiff's funds were actually transferred to D&B. The only evidence before the Court is that D&B was funded by a $5,039,122 loan from third party MCG, a $1,193,315 payment by Simmons Media to purchase a fifty percent interest in that entity, and a $270,000 payment by Simmons Media "to bring D&B's debts current." Leifson Aff. at ¶¶ 6-10; Wald Decl. at RA04996. Plaintiff's conclusory assumption that his money was used to fund D&B is contradicted by admissible evidence of actual fund transfers, including the undisputed fact that Simmons Media transferred an additional $12 million to a Devine/Buzil limited liability company in 2003 in the form of a loan that is currently in default. Leifson Aff. at ¶¶ 24-26. D&B respectfully submits that absent admissible evidence that Plaintiff's

money (and not the $18.5 million contributed by MCG and Simmons), was used to fund D&B Plaintiff cannot establish that D&B benefitted from the alleged New York conduct of Devine. Unable to establish such benefit, Devine's conduct in New York cannot be attributed to D&B for purposes of establishing personal jurisdiction.

## I.
## THE ACTS OF DEFENDANT DEVINE IN NEW YORK CANNOT BE ATTRIBUTED TO D&B FOR PURPOSES OF ESTABLISHING PERSONAL JURISDICTION IN NEW YORK

Plaintiff concedes that his sole basis for asserting personal jurisdiction over D&B is that "D&B is subject to the jurisdiction of this Court by virtue of its relationship with Devine, either as an agent or co-conspirator."  Opposition Brief at 6.  New York law is clear, however, that conclusory allegations of agency or conspiracy are insufficient for purposes of establishing personal jurisdiction over a foreign defendant.  As this Court stated in *Cleft of the Rock Foundation v. Wilson*, 992 F. Supp. 574, 582-83 (E.D.N.Y. 1998), to establish jurisdiction over a foreign defendant based on the New York conduct of an alleged agent or co-conspirator, the plaintiff must plead specific facts to support the conclusion that the purported agent or conspirator was acting for the "benefit of the out-of-state conspirator" or principal.  *See also Heinfling v. Colapinto*, 946 F. Supp. 260, 265 (S.D.N.Y. 1996) (dismissing action against non-resident defendant on ground that plaintiff failed to plead specific facts to show that acts of the purported agent or co-conspirator "were for the benefit of her putative out-of-state co-conspirators"); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (dismissing action for lack of personal jurisdiction where plaintiff "made only broadly worded and vague allegations" without alleging specific facts that the alleged agent of the defendant "engaged in purposeful activities in this state in relation to [plaintiff's] transaction *for the benefit* of" the defendant).

Here, Plaintiff argues that Devine's New York activities are attributable to D&B because they occurred "during his tenure as co-manager of D&B." Brief at 10. Although Plaintiff's conspiracy claim is premised on the allegation that "as soon as Allen's money was deposited to Superior, Devine . . . would transfer the money to another of the many LLCs that he and Buzil controlled" (Complaint, ¶ 7), there is not a single allegation of fact in the Complaint that D&B received or benefitted from the funds Plaintiff was fraudulently induced to wire "from his accounts in New York to Superior's accounts in Illinois" (Complaint, ¶ 9). Plaintiff's failure to plead such facts cannot be excused on the ground that "details that may be peculiarly within the opposing party's knowledge do not need to be pleaded at the complaint stage." Opposition Brieft at 19-20. Plaintiff assumed control of Superior in November 2007 (Complaint at ¶ 161) and has access to the "records of Superior" (*Id.* at ¶ 160), including bank account statements that would reflect whether funds that Plaintiff wired to Superior were actually sent to or used by D&B. Moreover, Plaintiff is involved in litigation in New York State Court with Defendants Devine and Buzil and has had access to discovery in that forum.

Plaintiff has failed to plead specific facts supporting his conclusory allegation that D&B benefitted from Devine's alleged fraud because the evidence offered by Plaintiff in opposition to this motion establishes that D&B was funded with a $5 million loan from MCG. *See* Wald Decl. at Ex. 1, p. RA04996; Leifson Aff. at ¶ 6. Plaintiff does not allege a single transfer of funds from Superior to D&B because he cannot establish that any such transfers involved funds that were allegedly procured through Devine's fraud. In fact, at least $600,000 of funds transferred to Superior before D&B was formed in March 2004 likely belonged to Simmons Media, the current owner of D&B, from whom Plaintiff is attempting to recover his alleged losses that occurred before Simmons

acquired D&B from Devine and Buzil. Leifson Aff. at ¶¶ 24-27. Plaintiff's failure to plead specific facts establishing that D&B benefitted from the alleged fraud of Devine and Buzil is fatal to this effort to impose jurisdiction over that Utah limited liability company based on the alleged conduct of Devine in New York.

Unable to allege specific transfers of Allen's funds to D&B (evidence within the possession and/or control of Plaintiff), Plaintiff offers a "Non Recourse Note and Participation Agreement" executed by Devine as evidence that D&B received "at least $2.23 million of the monies that were intended to benefit Superior". *See* Wald Decl. at ¶¶ 7-8; Ex. 4 at RA02141-42. Nowhere in that document or in any of the other "evidence" submitted by Plaintiff is there any suggestion that the $2.23 million was paid to D&B by Devine from Plaintiff's funds or any other source. As those documents prove, D&B was funded by a $5,039,122 loan from MCG. Wald Decl. at Ex. 2, RA04996. The "Note" merely represents a promise by Devine to pay up to $2,236,522 of the proceeds from Devine's "sale or exchange . . . of all or any part of its membership interests in D&B Towers, LLC". The Note does not constitute evidence that D&B received any of the funds that Plaintiff claims he was fraudulently induced by Devine to transfer to Superior. Plaintiff is in possession and control of Superior's bank account information and could easily allege such transfers if they in fact occurred. Plaintiff's failure to include such allegations in the Complaint mandates the dismissal of his action against D&B on the ground that Devine's alleged fraudulent activities in New York cannot be attributed to D&B for purposes of establishing jurisdiction.

Even assuming Plaintiff could offer evidence that Devine, through Superior or some other entity he controlled, transferred $2.2 million to D&B, that amount is far less than the $12 million loaned by Simmons Media to a Devine/Buzil entity that is in default. That loan was made before

D&B was formed in 2004 (Leifson Aff. at 24-27) and directly refutes Plaintiff's erroneous assumption that he is the sole source of all funds transferred among the Devine/Buzil entities. Plaintiff has not alleged specific facts establishing that D&B benefitted from Devine's alleged fraudulent activities in New York. That failure precludes Plaintiff from forcing a Utah limited liability company to litigate in a foreign jurisdiction where it has no contacts.

This Court's decision in *Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574 (E.D.N.Y. 1998) (cited at pp. 8-9 of Plaintiff's Brief), demonstrates why Plaintiff's Complaint fails to adequately allege specific facts justifying the exercise of personal jurisdiction over D&B in New York. The plaintiff in *Cleft* alleged that the Texas defendant was subject to jurisdiction in New York based on the New York activities of his alleged co-conspirators. The Court held that in order to establish jurisdiction over the Texas defendant, the plaintiff must allege that "the New York co-conspirators' activity *was for the benefit of the out-of-state conspirators* and that the co-conspirators in New York acted at the behest of or on behalf of or under the control of the out-of-state conspirators." 992 F. Supp. at 583 (citing *Heinfling v. Colapinto*, 946 F. Supp. 260, 265 (S.D.N.Y. 1996)(emphasis added). Applying that test, this Court ruled that the Texas defendant was subject to New York jurisdiction because "the plaintiffs allege that Boyd facilitated the conspiracy by [1] laundering the proceeds of the scheme through his attorney trust account," [2] communicating with the plaintiffs in New York "to convince them to play ball with Defendants", and [3] benefitt[ing] from the alleged wrongdoing by allegedly using some proceeds of the scheme to pay off the mortgage note on his house . . .". *Id*. at 583-84.

Here, Plaintiff alleges in conclusory fashion that "Devine and Buzil disposed of Plaintiff's property, in large part by transferring it to the Devine/Buzil LLCs." Complaint at 208. All 23

"LLCs" are lumped together with no specific allegations of transfers to the individual companies. There is not a single allegation of any transfers from Superior (where Plaintiff's funds were initially deposited) (Complaint, ¶ 7) to D&B. Similarly, Plaintiff alleges that Devine's fraudulent acts were "done on behalf of the Devine/Buzil LLC's" (*id.* at ¶ 203), yet fails to allege a single instance where Devine contacted Plaintiff as a representative of D&B, and not in his role as an officer of Superior soliciting funds for that entity. Unlike *Cleft* where the plaintiff alleged specific facts showing that the fraudulently procured funds were transferred to the defendant's account in Texas and used for his benefit, there are no such allegations of fact asserted against D&B here. Plaintiff is now in control of financial records and bank accounts of the entity that allegedly received his fraudulently procured funds. The failure to allege a single transfer of Plaintiff's funds from Superior to D&B is fatal to his claim that D&B is subject to the jurisdiction of this Court.

## II.
## THE COMPLAINT FAILS TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS FOR ESTABLISHING JURISDICTION OVER AN OUT-OF-STATE DEFENDANT ON THE BASIS OF A CONSPIRACY CLAIM

Plaintiff argues that the heightened pleading requirements of Rule 9(b) do not apply to conspiracy allegations which are evaluated under FED. R. CIV. P. 8(a). Plaintiff claims that he has adequately plead a civil conspiracy against D&B because the Complaint alleges that "Devine, Buzil and the Devine/Buzil LLCs formed a common understanding and agreement to carry out unlawful acts against Allen." Opposition Brief at 15-17, citing Complaint, ¶ 201.

Regardless of which Rule governs the pleadings of conspiracy claims (Rule 9(b) or Rule 8(a)), New York law imposes a heightened pleading standard for conspiracy claims in cases where the Plaintiff is attempting to establish jurisdiction over an out-of-state defendant:

> [t]he bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of section 302(a)(2). Before long-arm jurisdiction can be exercised over an out-of-state co-conspirator, the plaintiff must demonstrate (1) a prima facie *factual* showing of a conspiracy to commit a tort in New York, and (2) *allege specific facts* warranting the inference that the defendant was a member of the conspiracy.

*Cleft*, 992 F. Supp. at 582 (emphasis added and citations omitted).

Application of that heightened standard by New York courts has resulted in the dismissal of actions where conclusory allegations of conspiracy were asserted as a basis for establishing jurisdiction over out-of-state defendants. *See e.g. Heinfling v. Colapinto*, 946 F. Supp. 260 (S.D.N.Y. 1996) (dismissing New York conspiracy action against California defendants where "plaintiff has failed to show that [the co-conspirator's] acts in New York were for the benefit of her putative out-of-state co-conspirators" because she "has not alleged a single fact in relationship to any claim that suggests any type of benefit" to the California defendants); *Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc.*, 26 F. Supp. 2d 593, 604 (S.D.N.Y. 1998) ("Because the complaint lacks a clear, well defined explanation of [defendant's] role in the alleged conspiracy and lacks any references to specific connections between [defendant] and the conspiracy in New York, the exercise of jurisdiction would necessarily fail to meet constitutional requirements for the exercise of personal jurisdiction."); *Singer v. Bell*, 599 F. Supp. 350, 353 (S.D.N.Y. 1984) (dismissing out-of-state defendant from New York conspiracy action because "there must be a fact basis upon which the sought-for inferences of conspiracy and knowing participation therein must rest."); *Huang v. Sentinel Government Securities*, 657 F. Supp. 485, 492 (S.D.N.Y. 1987) (dismissing foreign defendant from New York conspiracy action where plaintiff failed to "come forward with some definite evidentiary facts to connect the defendants with transactions in New York").

Here, Devine's alleged acts in New York cannot be attributed to D&B under a conspiracy theory absent specific factual allegations that D&B received or benefitted from <u>Plaintiff's</u> funds that were deposited in Superior's account in Illinois. Because the Superior account included $600,000 in funds from the Simmons Media loan, Plaintiff simply cannot in good faith allege that any transfer of a lesser amount of funds from Superior to D&B constituted a benefit to D&B from the alleged fraudulent activities in New York. Plaintiff's failure to allege <u>specific</u> <u>facts</u> connecting D&B with the New York transactions requires dismissal of the action against D&B.

Nor can Plaintiff defeat this motion to dismiss by arguing that "under New York law, a particular defendant's receipt of the ill-gotten funds is not an element of a claim for conspiracy to defraud." Opposition Brief at 17. While that may be true for purposes of conspiracy claims generally, where the conspiracy claim is alleged as the basis for asserting personal jurisdiction over out-of-state defendants, the plaintiff bears a heightened burden and must plead specific facts demonstrating that "the New York co-conspirators' activity was for the benefit of the out-of-state conspirators." *Cleft*, 992 F. Supp. at 583. For the reasons previously stated, Plaintiff has utterly failed to satisfy that requirement.

Finally, Plaintiff is attempting to have it both ways. On the one hand, he argues that Devine was D&B's agent for purposes of attributing his New York conduct to D&B. Opp. Brief at 7-8. Yet, when confronted with the "intracorporate conspiracy doctrine" he argues that Devine was acting "to advance his own interests separate from the interests" of D&B. Opp. Brief at 21. While conclusory allegations of conspiracy or agency may be sufficient for purposes of surviving a motion to dismiss a claim under Rule 12(b)(6), such allegations fail to satisfy the heightened pleading requirements for imposing jurisdiction over out-of-state defendants. *See Cleft*, 992 F. Supp. at 582-83; *Karabu*,

16 F. Supp. 2d at 323-24. At a minimum, Plaintiff must "allege specific facts" demonstrating that "the New York co-conspirators' activity was for the benefit of the out-of-state conspirators . . .". 992 F. Supp. at 583. Plaintiff has failed to satisfy that requirement and his complaint against D&B should be dismissed for lack of jurisdiction.

### III.
### JURISDICTION OVER D&B IS INCONSISTENT WITH TRADITIONAL NOTIONS OF FAIR PLAY AND DUE PROCESS

Because Plaintiff has failed to plead specific facts connecting D&B with the alleged tortious acts of Devine in New York, the assertion of jurisdiction over D&B in this forum would violate due process. D&B has no other contacts with New York that would justify jurisdiction under "traditional notions of fair play and substantial justice." *Beckett v. Prudential Ins. Co.*, 893 F. Supp. 234, 238 (E.D.N.Y. 1995).

Plaintiff argues that jurisdiction over D&B comports with due process because "a single action against these nationwide defendants would promote the interstate judicial system's shared interests in obtaining the most efficient resolution of the controversy." Opp. Brief at 13. But at least three of the parties who Plaintiff claims played an integral role in the alleged fraudulent scheme - Buzil, Davis and Superior - are not parties to this action. If Plaintiff is allowed to proceed against only one of the three primary conspirators in this forum, actions will have to be filed in other jurisdictions to resolve all claims and defenses arising out of those parties' involvement in the alleged conspiracy.

While New York admittedly "has an interest in providing a convenient forum for Allen, a New York resident who was defrauded in New York" (Opp. Brief at 13), that interest is outweighed by the unfairness and burden of forcing D&B's successor, a Utah company with no New York

contacts, to defend an action in New York that is based on the alleged fraud of D&B's former owners. Plaintiff has failed to plead specific facts tying that alleged fraud to D&B. While the owners of D&B's successor can empathize with Plaintiff's alleged loss (having loaned more than $12 million to a Devine/Buzil entity that is in default), that loss alone does not justify forcing a Utah company to litigate in New York.

## CONCLUSION

Plaintiff's claims against D&B should be dismissed for lack of personal jurisdiction.

Dated this 29th day of May 2009.

/s/ Mark L. Callister
Mark L. Callister
CALLISTER NEBEKER & McCULLOUGH
10 East South Temple, Suite 900
Salt Lake City, Utah 84133
Telephone: (801) 530-7425
Facsimile: (801) 364-9127
*mcallister@cnmlaw.com*

Nicholas Fortuna, Esq.
ALLYN & FORTUNA, LLP
200 Madison Avenue, 5th Floor
New York, New York 10016
Telephone: (212) 213-8844
Facsimile: (212) 213-3318
*nfortuna@allynfortuna.com*
*Attorneys for Defendant D&B Towers, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of **DEFENDANT D&B TOWERS, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was served by electronic transmission via the U.S. District Court's CM/ECF system, on the 29th day of May 2009, on the following:

Lawrence T. Gesser, Esq.
Alexandra Wald, Esq.
Nathaniel P.T. Read, Esq.
COHEN & GRESSER, LLP
100 Park Avenue, 23rd Floor
New York New York 10017

Kevin J. O'Conner, Esq.
PECKAR & ABRAMSON, P.C.
41 Madison Avenue
New York, New York 10010

Robert A. Barrer, Esq.
HISCOCK & BARCLAY, LLP
One Park Place
300 South State Street
Syracuse, New York 13202-2078

/s/ Mark L. Callister