Nicholas Fortuna, Esq. (NF-9191)
ALLYN & FORTUNA, LLP
200 Madison Avenue, 5th Floor
New York, New York 10016
Telephone : (212) 213-8844
Facsimile: (212) 213-3318
*nfortuna@allynfortuna.com*

Mark L. Callister, Esq. (Admitted Pro Hac Vice)
CALLISTER NEBEKER & McCULLOUGH
Zions Bank Building, Suite 900
10 East South Temple
Salt Lake City, Utah 84133
Telephone: (801) 530-7300
Facsimile: (801) 364-9127
*mcallister@cnmlaw.com*
***Attorneys for Defendant D&B Towers, LLC***

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
C. ROBERT ALLEN, III, by LUKE ALLEN, as Guardian for
the Property Management of C. Robert Allen, III,     :

                Plaintiff,     :   **Case No. 09 Civ. 0668 (ADS) (MLO)**

           - against -     :

CHRISTOPHER DEVINE, BRUCE BUZIL, LAKESHORE     :   **AFFIDAVIT OF BRET J. LEIFSON IN SUPPORT OF DEFENDANT D&B TOWERS, LLC'S MOTION TO DISMISS**
MEDIA, LLC, MILLCREEK BROADCASTING LLC,
COLLEGE CREEK MEDIA LLC, MARATHON MEDIA     :
GROUP, LLC, 3 POINT MEDIA – SALT LAKE CITY, LLC,
3 POINT MEDIA DELTA, LLC, 3 POINT MEDIA – UTAH,     :
LLC, 3 POINT MEDIA – FRANKLIN, LLC, 3 POINT
MEDIA – PRESCOTT VALLEY, LLC, 3 POINT MEDIA–     :
COALVILLE, LLC, 3 POINT MEDIA– ARIZONA, LLC,
3 POINT MEDIA – FLORIDA, LLC, 3 POINT MEDIA –     :
KANSAS, LLC, 3 POINT MEDIA– OGDEN, LLC, 3 POINT
MEDIA – SAN FRANCISCO, LLC, MIDVALLEY RADIO     :
PARTNERS, LLC, D&B TOWERS, LLC, SUPERIOR
BROADCASTING OF NEVADA, LLC, SUPERIOR     :
BROADCASTING OF DENVER, LLC, WACKENBURG
ASSOCIATES, LLC, PORTLAND BROADCASTING LLC,     :
DESERT SKY MEDIA LLC, SKY MEDIA LLC, and John
Does 1-50,     :
                Defendants.     :
-----------------------------------------------------------------x

519945v2

STATE OF UTAH              )
                           : ss.
COUNTY OF SALT LAKE   )

  Bret J. Leifson, being first duly sworn on oath, deposes and states as follows:

  1. I am a Manager of D&B Towers, LLC, now known as Humpy Peak Tower, LLC ("D&B"). I am the principle person who has had responsibility for the financial and accounting records of D&B since July 2006. The matters stated herein are true of my own personal knowledge except where they are based (i) on a review of records of the Illinois Secretary of State and the Utah Division of Corporations and Commercial Code, and (ii) on a review of D&B's accounting records provided to me by parties working for and/or under the control of Defendants Christopher Devine and Bruce Buzil for the time periods of 2005 and January through July 2005, as to which I am informed and believe that these matters are true. If called upon to do so, I could and would testify competently thereto.

  2. D&B was created on March 1, 2004 as an Illinois limited liability company. The original members of D&B were Defendant Christopher Devine ("Devine"), who owned a 60% membership interest, and Defendant Bruce Buzil ("Buzil"), who owned a 40% membership interest. Devine and Buzil were also the managers of D&B.

  3. To the best of my knowledge, when Devine and Buzil created D&B, they opened a bank account for D&B in the Chicago area at Fifth Third Bank.

  4. To the best of my knowledge, D&B was qualified to do business in the State of Utah as a foreign LLC in March 2004.

  5. On January 24, 2005, D&B purchased from Midwest Tower Partners, LLC ("Midwest") an FM radio tower site located on Humpy Peak in Summit County, Utah (East of Salt Lake City, Utah) (the "Humpy Peak Site").

519945v2

6.   In order to pay the purchase price to Midwest for the Humpy Peak Site and certain related costs, D&B borrowed from MCG Capital Corporation ("MCG") the sum of $5,185,000 (the "MCG Loan"). To secure the MCG Loan, MCG took a security interest in all of D&B's assets and in the ownership interests of Devine and Buzil.

7.   On March 31, 2005, Simmons Media Group, LLC ("Simmons") bought a 50% membership interest in D&B for the sum of $1,193,315. After Simmons purchased its 50% membership interest, Devine owned a 30% membership interest and Buzil owned a 20% membership interest.

8.   Since Devine and Buzil were already handling the day-to-day management of D&B, Devine and Buzil to continued to handle the every day affairs of D&B.

9.   In the spring of 2006, Simmons became aware that Devine and Buzil were not paying the debts of D&B. At the insistence of Simmons, during June 2006, day-to-day management of D&B was assumed by Simmons.

10.   After taking over the day-to-day management of D&B in June 2006, Simmons paid on behalf of D&B over $270,000 in order to bring D&B's debts current including the MCG Loan.

11.   During June 2006, I opened a bank account for D&B at Zions Bank in Salt Lake City, Utah, and this account became and still is the sole operating account for D&B. Based on my review of the D&B Towers ledger and bank statements for the Utah account, I am not aware of any fund transfers from accounts in New York to the D&B Towers accounts in Illinois or Utah.

12.   On or about October 22, 2007, MCG notified Devine and Buzil that they were each in breach of their obligations under a Capital Call Agreement that they entered into in conjunction with the MCG Loan and MCG gave Devine and Buzil 10 days to cure their defaults.

519945v2

13. On or about December 6, 2007, MCG declared the MCG Loan in default because Devine and Buzil had not cured their defaults.

14. On or about December 18, 2007, in order to prevent MCG from foreclosing under the MCG Loan, Simmons acquired the MCG Loan from MCG for $5,624,042.94.

15. During March 2008, Simmons, as the lender under the MCG Loan and pursuant to the security interest original granted by Devine and Buzil to MCG under the MCG Loan, completed a strict foreclosure of Devine's and Buzil's membership interests in D&B.

16. In May 2008, Simmons filed suit against Devine and Buzil, as well as others, seeking a court order that Simmons had completed a strict foreclosure of Devine's and Buzil's membership interests in D&B.

17. On November 12, 2008, Simmons became the sole owner of D&B when the U.S. District Court for the State of Utah, Central Division, entered a Judgment Against Defendants Christopher Devine and Bruce Buzil and decreed that Simmons had effected a strict foreclosure of its security interest in the D&B membership interests of Devine and Buzil, and that Simmons was the legal owner of those membership interests.

18. On December 3, 2008, Simmons caused D&B to be re-domesticated from Illinois to Utah and named David E. Simmons, Bruce W. Thomas, G. Craig Hanson and myself as managers. On December 16, 2008, Simmons caused the name of D&B to be changed to Humpy Peak Tower, LLC.

19. To the best of my knowledge, D&B has never had and does not now have an office, employees, a mailing address or post office box or telephone line in New York, has never had and does not now own any property, real or personal, in New York, and has not had and does not have any New York bank accounts.

519945v2

20.     To the best of my knowledge, D&B has never been and is not now registered to do business in New York and has not and does not pay New York income or property taxes.

21.     D&B has not and does not solicit business or engage in any other conduct on a regular or persistent basis in New York.

22.     D&B owns and operates an FM radio tower located at Humpy Peak Site in Summit County, Utah (East of Salt Lake City, Utah). D&B leases space on its radio tower located at Humpy Peak Site to local Utah radio stations. All of the radio stations that use the Humpy Peak Site tower broadcast their signals within the state of Utah. Accordingly, D&B has not and does not derive any revenue from goods used or consumed or services rendered in New York.

23.     D&B has not and does not derive substantial revenue from interstate or international commerce.

24.     On January 29, 2003, before Simmons purchased a membership interest in D&B, Simmons advanced Two Million Dollars ($2,000,000) to Defendant Lakeshore Media, LLC ("Lakeshore") pending completion of a formal loan from Simmons to Lakeshore. This advance was deposited into Lakeshore's operating account. Defendant Lakeshore is owned and controlled by Defendants Devine and Buzil.

25.     Based on a review of the Lakeshore general ledger, it appears that January 29, 2003, on same day as the Simmons' advance, Lakeshore transferred One Hundred Thousand Dollars ($100,000) to Superior Broadcasting Co. ("Superior"), the same Superior the Plaintiff assumed control over in November 2007.

26.     On May 2, 2003, Simmons finalized its loan to Lakeshore (the "Lakeshore Loan") and transferred Ten Million Dollars ($10,000,000) to Lakeshore's operating account.

519945v2

27.	Based on a review of the Lakeshore general ledger, it appears that on May 5, 2003, just three days after the Lakeshore Loan, Lakeshore transferred Five Hundred Thousand Dollars ($500,000) to Superior. A transfer from Lakeshore to Superior was expressly prohibited under the terms of the Lakeshore Loan.

28.	After making the interest payments required under the Lakeshore Loan through December 2005, Lakeshore defaulted on the Lakeshore Loan when it failed to make interest payments starting March 31, 2006. Simmons has been working on collecting the Lakeshore Loan for several years and to date we have only been able to collect on one minor piece of collateral. As of July 30, 2008, when Simmons quit accruing interest, Lakeshore owed Simmons $38,242,899 under the Lakeshore Loan.

Dated this 2 day of April 2009.

_____
BRET J. LEIFSON

The foregoing instrument was acknowledged by Bret J. Leifson before me this 2nd day of April 2009.

_____
NOTARY PUBLIC

[Notary Public stamp: LAURIE S. HART, 10 East South Temple, Suite 900, Salt Lake City, Utah 84133, My Commission Expires May 14, 2012, State of Utah]

519945v2