**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
C. ROBERT ALLEN, III, by LUKE ALLEN, as Guardian
for the Property Management of C. Robert Allen III,

                       Plaintiff,

    -against-

CHRISTOPHER DEVINE, BRUCE BUZIL,
LAKESHORE MEDIA, LLC, MILCREEK
BROADCASTING LLC, COLLEGE CREEK MEDIA
LLC, MARATHON MEDIA GROUP, LLC, 3 POINT
MEDIA – SALT LAKE CITY, LLC, 3 POINT MEDIA
DELTA, LLC, 3 POINT MEDIA – UTAH, LLC, 3
POINT MEDIA – FRANKLIN, LLC, 3 POINT MEDIA –
PRESCOTT VALLEY, LLC, 3 POINT MEDIA –
COALVILLE, LLC, 3 POINT MEDIA – ARIZONA,
LLC, 3 POINT MEDIA – FLORIDA, LLC, 3 POINT
MEDIA – KANSAS, LLC, 3 POINT MEDIA – OGDEN,
LLC, 3 POINT MEDIA – SAN FRANCISCO, LLC,
MIDVALLEY RADIO PARTNERS, LLC, D&B
TOWERS LLC, SUPERIOR BROADCASTING OF
NEVADA, LLC, SUPERIOR BROADCASTING OF
DENVER, LLC, WACKENBURG ASSOCIATES, LLC,
PORTLAND BROADCASTING LLC, DESERT SKY
MEDIA LLC, SKY MEDIA LLC, DEVINE RACING
MANAGEMENT, LLC, ACB CONSULTING CO.,
RICHARD DAVIS, EXCELSIOR CAPITAL, LLC,
SUPERIOR BROADCASTING CO., and John Does 1-50,

                       Defendants.
-------------------------------------------------------------------X

**MEMORANDUM**
**OF DECISION AND**
**ORDER**
09-cv-668 (ADS)
(MLO)

**APPEARANCES:**

**Cohen & Gresser LLP**
*Attorneys for the plaintiffs*
100 Park Avenue
23rd Floor
New York, NY 10017
       By:    Lawrence T. Gresser, Esq.
               Alexandra Sarah Wald, Esq.
               Nathaniel P.T. Read, Esq.
               Alexis Gena Stone, Esq.
               Harvey B. Silikovitz, Esq., of Counsel

**Peckar & Abramson, P.C.**
*Attorneys for all defendants, except defendants Superior Broadcasting Co., D&B*
*Towers LLC, Richard Davis, and Excelsior Capital, LLC*
41 Madison Ave, 20th Floor
New York, NY 10010
      By:    Daniel E. Budorick, Esq.
               David Scriven-Young, Esq.
               Edward Pacer, Esq.
               Kevin Joseph O'Connor, Esq.
               Thomas Jerome Curran, Esq., of Counsel

**Allyn & Fortuna, LLP**
*Attorneys for the defendant D&B Towers LLC*
200 Madison Avenue
5th Floor
New York, NY 10016
      By:    Nicholas J. Fortuna, Esq., of Counsel

**Callister Nebeker & McCullough, P.C.**
*Attorneys for the defendant D&B Towers LLC*
Zions Bank Building, Suite 900 10 East South Temple
Salt Lake City, UT 84133
      By:    Mark L Callister, Esq., of Counsel

**Judd Burstein, P.C.**
*Attorneys for the defendants Richard Davis and Excelsior Capital, LLC*
1790 Broadway
Suite 1501
New York, NY 10019
      By:    Judd Burstein, Esq., of Counsel

**NO APPEARANCE:**

Defendant Superior Broadcasting, Co.

**SPATT, District Judge.**

        Plaintiff C. Robert Allen, III, by and through his Guardian for Property

Management, Luke Allen, alleges in this case that the defendants defrauded him out

of tens of millions of dollars over several years.  Presently before the Court are four

motions:

1) a motion to dismiss for failure to state a claim by defendants Lakeshore Media, LLC, College Creek Media LLC, Marathon Media Group, LLC, 3 Point Media – Salt Lake City, LLC, 3 Point Media Delta, LLC, 3 Point Media – Prescott Valley, LLC, 3 Point Media – Coalville, LLC, 3 Point Media – Arizona, LLC, 3 Point Media – Florida, LLC, 3 Point Media – Kansas, LLC, 3 Point Media – Ogdon, LLC, 3 Point Media – San Francisco, LLC, Midvalley Radio Partners, LLC, Superior Broadcasting of Nevada, LLC, Superior Broadcasting of Denver, LLC, Wackenburg Associates, LLC, Portland Broadcasting LLC, Desert Sky Media LLC, and Sky Media LLC, (collectively, the "Devine/Buzil LLCs") and ACB Consulting Co. ("ACB") and Christopher Devine (collectively with the Devine/Buzil LLCs, the "Devine Moving Defendants");

2) a motion to dismiss for lack of personal jurisdiction by defendant Bruce Buzil;

3) a motion to dismiss for failure to state a claim by defendants Richard Davis and Excelsior Capital, LLC (collectively, the "Davis Moving Defendants"); and

4) a motion to dismiss for lack of personal jurisdiction by defendant D&B Towers LLC ("D&B Towers").

For the reasons set forth below, the Court (1) denies in part and grants in part the motion to dismiss by the Devine Moving Defendants, (2) grants the motion to dismiss by defendant Buzil, (3) deems the motion to dismiss by the Davis Moving

3

Defendants to be moot, and (4) denies the motion to dismiss by defendant D&B Towers.

## I. BACKGROUND

The Court set forth the details of the plaintiff's allegations in this matter in its previous decision in this case, Allen ex rel. Allen v. Devine, 670 F. Supp. 2d 164 (E.D.N.Y. 2009) ("Allen I"), issued November 19, 2009. Familiarity with that decision is assumed. After the Court issued Allen I, the plaintiff amended his complaint, adding to and modifying certain of his allegations. However, the gravamen of both complaints is the same: the plaintiff alleges that the defendants, led by Christopher Devine and assisted by Bruce Buzil, convinced the plaintiff to loan approximately $70 million to defendant Superior or related entities, based on false representations of Superior's financial status. The defendants then illegally diverted this money for their own benefit.

In Allen I, the Court decided three motions: (1) a motion by the Devine Moving Defendants (except for ACB, who was not a party at the time) to dismiss pursuant to Fed. R. Civ. P. 19 for failure to join an indispensable party, (2) a motion by these same defendants in the alternative to transfer the case to the Northern District of Illinois, and (3) a motion by defendant D&B Towers to dismiss for lack of personal jurisdiction and failure to state a claim. The Court denied all three of these motions, but ordered additional action with respect to the Rule 19 motion. Specifically, the Court found in addressing the defendants' Rule 19 motion that Richard Davis and Bruce Buzil were necessary parties with respect to the plaintiff's claims for constructive trust and injunctive relief. The Court also found that Superior

4

Broadcasting Co. ("Superior") was a necessary party with respect to the plaintiff's claim for constructive trust. The Court therefore ordered these parties to be joined to the case.

On December 15, 2009, prior to any of the defendants answering the original complaint, the plaintiff filed an amended complaint. Pursuant to the Court's directive, the amended complaint joined Superior, Davis, and Buzil with respect to the plaintiff's claim for a constructive trust. However, the amended complaint also asserted claims against Buzil for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, civil conspiracy, unjust enrichment, conversion, and breach of fiduciary duty. In addition, the plaintiff named for the first time Devine Racing Management, LLC ("Devine Racing"), ACB, and Excelsior Capital, LLC as defendants, asserting a constructive trust claim against each entity, while also asserting civil conspiracy, conversion, and unjust enrichment against ACB and Devine Racing.

Now, each of the defendants, except Superior, moves for dismissal of the amended complaint. First, the Devine Moving Defendants move to dismiss the plaintiff's RICO claims against Devine for failure to state a claim, and also assert that the Court should not exercise supplemental jurisdiction over the would-be remaining state law claims. Second, defendant Bruce Buzil asserts that the Court's exercise of personal jurisdiction over him is precluded by a previous holding in a related proceeding in New York state court. Third, the Davis Moving Defendants move to dismiss based on separate related New York state case. Fourth, defendant D&B

Towers renews its previous motion to dismiss for lack of personal jurisdiction. The Court addresses each of these motions in turn.

## II. DISCUSSION

### A. The Plaintiff's Amended Complaint

As a threshold matter, a number of the defendants challenge the plaintiff's filing of an amended complaint without leave from the Court.  While the Court directed the plaintiff to join Davis, Buzil, and Superior with respect to certain limited claims, the amended complaint advances other claims against some of these defendants, and also joins three previously-unnamed defendants.  The plaintiff neither requested nor was granted leave from the Court to assert these additional claims.

Fed. R. Civ. P. 15(a), as amended December 1, 2009, provides in pertinent part:

> Amendments Before Trial.
>
> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within: . . .(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Pursuant to Rule 15, the right to amend the complaint once without leave from the Court does not terminate until 21 days after the filing of either (1) an answer or (2) a motion pursuant to Rule 12(b), (e), or (f).  Neither of these bars the plaintiff's amendment of his complaint by right.  Presently, no party in this case has yet filed an answer, and as of the filing of the amended complaint, only D&B Towers had filed a motion pursuant to Rule 12.  However, none of the amendments to the complaint affect D&B Towers, and thus the previous motion to dismiss by D&B Towers does

not bar the plaintiff's amendment of the complaint.  See, e.g., W.B. David & Co., Inc.

v. De Beers Centenary AG, No. 04-cv-5203, 2005 WL 3704690, at *2 (S.D.N.Y.

Sept. 2, 2005) ("Plaintiff may, as a matter of right, amend its Complaint as to the . . .

Defendants who have not yet answered.").  The Court therefore accepts the amended

complaint in its entirety.

**B. As to the Motion to Dismiss by the Devine Moving Defendants**

The plaintiff has asserted federal RICO claims against Devine, as well as state

common law claims against all of the Devine Moving Defendants.  The Devine

Moving Defendants now contend that (1) the plaintiff has not stated any valid RICO

claim against Devine, and that (2) the Court should not exercise supplemental

jurisdiction over the remaining state law claims asserted against the Devine Moving

Defendants.  The Court addresses these contentions in turn.

**1. Standard of Review**

Under the now well-established Twombly standard, a complaint should be

dismissed only if it does not contain enough allegations of fact to state a claim for

relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127

S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Second Circuit has explained that,

after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles.

Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in

a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not

suffice.'"  <u>Id</u>. (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).  "'Second, only a complaint that

states a plausible claim for relief survives a motion to dismiss' and '[d]etermining

whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common

sense.'"  <u>Id</u>. (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and . . .  determine whether

they plausibly give rise to an entitlement of relief."  <u>Iqbal</u>, 129 S. Ct. at 1950.

### 2. RICO Claims

The plaintiff asserts three civil RICO claims against Devine pursuant to 18

U.S.C. § 1964(c), which provides a private right of suit for violations of the criminal

RICO statute, 18 U.S.C. § 1962.  The plaintiff alleges that Devine, in connection with

Buzil, the Devine/Buzil LLCs, Devine Racing, ACB, Superior, and D&B Towers,

violated criminal RICO Subsections 1962(a), (c), and (d).  Devine has moved to

dismiss all of these claims against him.

### a. Subsection 1962(c)

Subsection 1962(c) provides in pertinent part:

> It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity . . . .

The Second Circuit has long held that, to prevail on a Subsection 1962(c)

claim, a plaintiff must show that the defendant engaged in "(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity."  <u>DeFalco v. Bernas</u>, 244

F.3d 286, 306 (2d Cir. 2001).  Devine challenges the sufficiency of the plaintiff's

pleading of a Subsection 1962(c) claim with respect to only two of these elements: whether the plaintiff has pleaded the existence of a RICO "enterprise", and whether the alleged racketeering activity constitutes a "pattern."

*Existence of an Enterprise*

18 U.S.C. § 1961(4) defines a RICO "enterprise" to "include [ ] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  The plaintiff alleges that the RICO enterprise here comprised Devine, Buzil, the Devine/Buzil LLCs, ACB, Devine Racing, and Superior, who together formed an association-in-fact that carried out the alleged substantive RICO violations.

Devine's challenge to the plaintiff's pleading of an enterprise focuses solely on the inclusion of Superior as a member of the alleged enterprise, which Devine asserts renders the entire conspiracy untenable.  According to Devine, because the plaintiff's allegations show that Superior did not share a "common purpose" with other members of the enterprise, there can be no conspiracy as alleged.  See First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) ("a RICO enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct" (internal quotations and citations omitted)); Crab House of Douglaston, Inc. v. Newsday, Inc., 418 F. Supp. 2d 193, 203 (E.D.N.Y. 2006) ("An enterprise must share a common purpose among its members.").  The parties agree that the plaintiff has alleged that Devine and Buzil were the sole officers of Superior during the asserted RICO time period.  However, Devine contends that the plaintiff's allegations show that Superior was a mere victim of Devine and Buzil's

abuses, and that, despite Devine and Buzil's alleged control over the entity, Superior never shared an intention to defraud the plaintiff.

The Court need not tarry long on this issue, as Devine's contention makes little common sense.  First, it cannot be the case that, as Devine urges, a defendant could avoid RICO liability by using a corporation he controls in a racketeering scheme, as long as the defendant also victimized that corporation.  Devine relies on Crab House of Douglaston, Inc., 418 F. Supp. 2d at 193, to attempt to support this position, but that reliance is misplaced.  In Crab House, the plaintiff alleged that a newspaper publisher, its distributors, and their auditor formed a RICO conspiracy to misstate newspaper circulation numbers and charge inflated rates to advertisers.  Crab House of Douglaston, Inc., 418 F. Supp. 2d at 201.  However, the plaintiff in Crab House also alleged that the auditor involved in the conspiracy was "independent" and "self-regulatory", had no knowledge of the other defendants' scheme, and merely failed to "rigorously check[]" the publisher's circulation numbers.  Id. at 201, 204.  Based on this, the court in Crab House found that the auditor could not form part of the alleged RICO conspiracy, because it did not share a purpose with the other conspirators.

Here, by contrast, the plaintiff alleges that Devine and Buzil controlled Superior during the relevant time period.  Devine and Buzil's acts and knowledge were thus imputable to Superior at that time.  Even if Devine and Buzil violated their fiduciary obligations to the company, Superior still shared in the criminal purpose of the alleged RICO enterprise as long as its executives directed it to do so.  The fact that Superior was also victimized is not a bar to this finding.  As the Second Circuit

has repeatedly recognized, "[a RICO] enterprise itself is often a passive instrument or victim of the racketeering activity."  Bennett v. U.S. Trust Co. of New York, 770 F.2d 308, 315 (2d Cir. 1985); DeFalco v. Bernas, 244 F.3d 286, 307 (2d Cir. 2001).  The Court therefore finds that Devine's objection is without basis, and that the plaintiff has adequately pleaded a RICO enterprise.

*Pattern of Predicate Acts*

As noted above, Subsection 1962(c) requires a showing that the predicate acts of racketeering form a "pattern."  Devine asserts that the alleged predicate acts of the alleged enterprise are insufficiently continuous to form a pattern, and that the plaintiff has therefore failed to assert a valid Subsection 1962(c) claim.  The plaintiff disagrees.

RICO sets forth a list of discrete violations of federal criminal law that may serve as "predicate acts" in proving RICO liability.  These acts include, among others, mail fraud, wire fraud, bank fraud, money laundering, transporting stolen property over state lines, and extortion.  The only bright line rule controlling how a set of predicate acts becomes a pattern of racketeering activity is that the enterprise must have completed at least two predicate acts within a ten year span.  18 U.S.C. § 1961(5).  However, once this minor threshold is satisfied, a plaintiff must then meet the true burden of a RICO claim, and show that the predicate acts are "related" to each other and "continuing".  See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).  Courts have analyzed the terms "related" and "continuing" in detail, but as the only dispute here concerns

whether the alleged predicate acts are "continuing," the Court addresses only that term.

The United States Supreme Court explained in <u>HJ Inc.</u> that a set of predicate acts are can be shown to be continuing in either a "closed-ended" or an "open-ended" manner.  492 U.S. at 242.  As this Court ultimately finds that the plaintiff has satisfied the requirements of pleading closed-ended continuity, the Court addresses only this method of demonstrating continuity.

Closed-ended continuity is generally satisfied by showing that a significant number of predicate acts took place over a sufficiently long period of time, and that these acts demonstrate a substantial breadth of action.  See, e.g., <u>Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.</u>, 187 F.3d 229, 242 (2d Cir. 1999).  The Second Circuit has provided no clear rules about the application of this standard, but has rather indicated that a court must "weigh[] a variety of non-dispositive factors, including, inter alia, the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes."  <u>GICC Capital Corp. v. Technology Finance Group, Inc.</u>, 67 F.3d 463, 467 (2d Cir. 1995) (citations omitted).  Although not a bright line rule, the Second Circuit has not found closed continuity in any scheme lasting less than two years.  <u>Fresh Meadow Food Services, LLC v. RB 175 Corp.</u>, 282 Fed. App'x 94 (2d Cir. 2008); <u>First Capital Asset Mgmt., Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 181 (2d Cir. 2004).

Some courts, and in particular the court in <u>Gross v. Waywell</u>, 628 F. Supp. 2d 475, 489–90 (S.D.N.Y. 2009), have also emphasized the importance of considering

the "societal threat" of the alleged RICO enterprise in assessing closed-ended continuity.  Focusing on the legislative history of the RICO statute, these courts have pointed out that the statute was intended to bring only the most serious, broad-based frauds into the federal courts.  See id. at 489–92.

However, even taking this restrictive rule into account, the United States Supreme Court has held that even a single racketeering scheme may provide the basis for RICO liability.  See HJ Inc., 492 U.S. at 236.  Similarly, while courts have stated that a single-*victim* scheme that rises to the level of a RICO pattern is "rare," Sathianathan v. Smith Barney, Inc., No. 04-cv-7122, 2007 WL 576097, *3 (S.D.N.Y. Feb. 21, 2007), other district courts, as well as the Second Circuit, have held that a single-victim scheme may form a RICO pattern when the predicate acts are numerous and extensive.  Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir. 1989) (holding that a nine-year scheme by two defendants to defraud a single plaintiff of various real estate holdings constituted a RICO pattern); State Wide Photocopy, Corp. v. Tokai Fin. Serv's, Inc., 909 F. Supp. 137, 140–41 (S.D.N.Y. 1995) ("While, generally, plaintiff was the only victim of the alleged scheme, defendants' repeated, related and continuous acts during the course of four years formed a RICO pattern.").

Here, the plaintiff alleges a RICO pattern that commenced in early 2002 and ended in late 2006.  For predicate acts, the plaintiff first alleges that Devine made false oral statements to him by telephone to cause him to wire money to Superior on approximately fifty separate occasions between February 2, 2002 and December 11, 2006.  According to the plaintiff, these acts constitute wire fraud in violation of 18 U.S.C. § 1343, bank fraud in violation of 18 U.S.C. § 1344, and causing stolen

property to be transported across state lines in violation of 18 U.S.C. § 2314.  Second, the plaintiff alleges that Devine and Buzil sent the plaintiff six falsified cash flow statements for Superior between April 15, 2002 and September 26, 2005, constituting mail fraud in violation of 18 U.S.C. § 1341.  Third, the plaintiff asserts that during this entire time period, members of the RICO conspiracy laundered the money he had wired to Superior in violation of 18 U.S.C. § 1956, by, among other things, freely transferring it among businesses controlled by Devine and Buzil, without recording the transfers as debts.  The plaintiff alleges that Devine and Buzil did this for the purpose of hiding the source of the funds.  Fourth, the plaintiff alleges that Devine extorted money from him in violation of 18 U.S.C. § 1951 in or around September or October 2005 by telling the plaintiff that financial restraints as well as threats from defendant Davis required the plaintiff to wire more money to Superior to protect the plaintiff's investments.

Devine does not challenge the sufficiency of the plaintiff's allegations of mail and wire fraud, but he does challenge the other four alleged criminal causes of action that the plaintiff relies on as predicate acts—namely, bank fraud, causing stolen property to be transported across state lines, money laundering, and extortion.  The Court has some doubt as to whether the alleged facts constitute (1) bank fraud, (2) causing stolen property to be transported across state lines, and (3) extortion.  However, the Court ultimately finds that the plaintiff has alleged a RICO pattern even if the plaintiff has not alleged bank fraud, causing stolen property to be transported across state lines, or extortion.  Thus, rather than analyze each of these allegations in detail, the Court assumes, without finding, that these predicate acts are not alleged.

However, in spite of Devine's protests, the Court is satisfied that the plaintiff has sufficiently alleged money laundering.  18 U.S.C. § 1956(a) and (c) provides that a person is guilty of money laundering when that person:

> knowing that the property involved in a financial transaction [which in any way or degree affects interstate or foreign commerce] represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity-- . . . (B) knowing that the transaction is designed in whole or in part-- (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

Devine argues that the plaintiff has failed to allege only one element of this claim: that the transfers between the members of the alleged RICO conspiracy affected interstate commerce.  According to Devine, because all of the alleged members of the conspiracy are Illinois persons, all of the transfers were *intra*state, rather than interstate.  However, the complaint alleges that numerous of these companies owned and operated assets in several other states, including Utah, California, and Colorado.  Thus, as money was being transferred to Illinois persons with operations in other states, the Court is satisfied that the transfers were ones that "in any way or degree affect[ed] interstate or foreign commerce."  18 U.S.C. § 1956(c).

Devine also challenges the plaintiff's money laundering claims as duplicative of his wire fraud claims, because Devine is alleged to have used the wires in pursuit of money laundering.  The Court finds no support for this conclusion in the law. Moreover, even if the alleged acts of transferring money among the defendants could not provide the basis for both wire fraud and money laundering, the Court finds that it

15

could view these acts as merely money laundering—and not wire fraud—and that this would not affect the Court's finding that the plaintiff has established continuity among the alleged predicate acts.  The Court is therefore satisfied that the plaintiff has alleged a claim for money laundering.

Applying the factors that the Second Circuit has identified in assessing closed-ended continuity of these alleged predicate acts—namely, "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes," GICC Capital Corp., 67 F.3d at 467, the Court finds that the plaintiff has alleged a RICO pattern.  First, the scheme is alleged to have taken place over the course of approximately five years, with predicate acts occurring at short, regular intervals during each of those five years.  This is a substantial length of time, and a large number of predicate acts.

Second, the Court is satisfied that the plaintiff has alleged at least three different types of predicate acts taken by the alleged RICO conspirators.  To be sure, two of these acts—mail fraud and wire fraud—are generally considered to carry less weight in showing a RICO pattern, in part because a predicate use of the mails or wires need not be itself illegal.  See, e.g., Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 20 (1st Cir. 2000) ("RICO claims premised on mail or wire fraud must be particularly scrutinized"); Gross, 628 F. Supp. 2d at 493 ("Unlike the other criminal offenses the statute enumerates as racketeering, use of the mail or wires is not inherently criminal.").  However, here, virtually every use of the mails and wires alleged as a predicate act is also alleged to be itself fraudulent and independently

illegal.  Compare Jerome M. Sobel & Co. v. Fleck, 03-cv-1041, 2003 WL 22839799,

*10 (S.D.N.Y. Dec. 1, 2003) (finding no closed-ended continuity where "predicate

acts of mail and wire fraud were of the 'innocent' variety—that is, they are not

alleged to have themselves been fraudulent").  Thus, the mail and wire fraud acts here

carry more independent weight, and at any rate, these acts are found in combination

with money laundering predicate acts.

Third, the plaintiffs allege that the RICO conspiracy comprised approximately

twenty-seven persons.  While only two of these alleged participants are natural

persons, the plaintiff alleges that the corporate participants in the scheme own

significant assets and have significant operations.  These entities are thus not

insubstantial.

To be sure, the number of victims here cuts against the finding of a RICO

pattern, as the plaintiff alleges that he was the single, primary victim of the scheme—

though Devine suggests that Superior is similarly alleged to be a victim of the

enterprise.  Also, the fact that there is only one scheme alleged similarly disfavors the

finding of a RICO pattern.  However, the Court ultimately finds that both of these

factors are offset by the length of the alleged scheme, the number of alleged predicate

acts, and the amount of money allegedly involved.

As for the effect of the scheme on society, the Court agrees with Devine that

the scheme, as alleged, is not as broad as the "prototypical RICO case".  See

Fitzgerald v. Chrysler Corp., 116 F.3d 225, 227 (7th Cir. 1997) (Posner, J ("The

prototypical RICO case is one in which a person bent on criminal activity seizes

control of a previously legitimate firm and uses the firm's resources, contacts,

facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over."); see also Gross, 628 F. Supp. 2d at 490.  However, neither is the scheme alleged to be so narrow as to have its ultimate effects limited strictly to the plaintiff.  First, the sheer amount of money that is alleged to have been stolen and laundered—$70 million—is a large enough shift of capital to send waves among the family members, charities, businesses, and banks where that money might otherwise have gone.  In fact, the plaintiff specifically alleges that he withdrew significant amounts of money from an investment fund to transfer it to the alleged RICO conspirators.  Second, the plaintiff alleges that Devine used the allegedly stolen funds to misrepresent to other investors the financial status of a number of the Devine/Buzil LLCs.  This alleged effect of the scheme also extends beyond the plaintiff.

Considering all of these factors, the Court finds that the plaintiff has alleged a RICO pattern of racketeering activity.  Having thus satisfied all four requirements for showing a Subsection 1962(c) scheme—the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," DeFalco, 244 F.3d at 306, the Court also finds that the plaintiff has alleged a cause of action against Devine pursuant to Subsection 1962(c).

### b. Subsection 1962(a)

The plaintiff also asserts a RICO claim against Devine pursuant to 18 U.S.C. § 1962(a).  Subsection 1962(a) makes it illegal for any person "who has received income derived . . . from a pattern of racketeering activity . . . to use or invest . . . any

part of such income . . . in the acquisition of any interest in, or the establishment or operation of, any enterprise . . . ."  However, because a civil claim for violation of Subsection 1962(a) relies on Subsection 1964(c) to provide a remedy for this violation, a plaintiff must allege an additional element to state a civil claim for a Subsection 1962(a) violation: an injury resulting from the investment of racketeering-generated funds.  See 18 U.S.C. § 1964(c) (requiring showing of an injury resulting from the substantive conduct alleged pursuant to Subsection 1962); Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990) (to state a claim under Section 1962(a), the plaintiff "must allege injury from the defendant's investment of the racketeering income.").

        Although a few circuits have adopted a more liberal approach, the Second Circuit has consistently distinguished between injuries alleged to be caused by racketeering activity, and injuries alleged to be caused by investment of racketeering funds.  See Gregory P. Joseph, Civil RICO: A Definitive Guide, § 7 (3d ed. 2010). Under the Second Circuit's rule, injuries caused by the racketeering activity itself may not form the basis for a Subsection 1962(a) claim.  See Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063 (2d Cir. 1996), *vacated in part on other grounds by*, 525 U.S. 128, 119 S. Ct. 493, 142 L. Ed. 2d 510 (1998); Ouaknine, 897 F.2d at 82–83 (2d Cir. 1990); Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 113 F. Supp. 2d 345, 383–84 (S.D.N.Y. 2000) (holding that, to state a Subsection 1962(a) claim, "Plaintiffs must allege a use or investment injury that is distinct from any injury resulting from the racketeering predicate acts themselves").  Similarly, neither can a plaintiff state a Subsection 1962(a) claim by merely alleging that the defendant

invested the racketeering-derived funds back into the racketeering enterprise, thus facilitating the enterprise's continuing operation.  See Kaczmarek v. International Business Machines Corp., 30 F. Supp. 2d 626, 628–29 (S.D.N.Y. 1998) (citing Williamson v. Simon & Schuster, 735 F. Supp. 565, 567–68 (S.D.N.Y. 1990)). Rather, the plaintiff must allege an injury from the investment of racketeering-derived funds that is distinct from the other injuries the plaintiff has suffered.  Compare Lugosch v. Congel, 443 F. Supp. 2d 254, 270–71 (N.D.N.Y. 2006) (finding plaintiff stated a Subsection 1962(a) claim where plaintiff alleged that the defendant RICO persons invested racketeering proceeds in a legitimate business that then competed with and thus harmed the plaintiffs' business).

Here, Devine contends that the plaintiff has not alleged any unique harm from the investment of the alleged racketeering-generated funds, and thus has not stated a Subsection 1962(a) claim.  The Court agrees.  The plaintiff alleges that Devine and the other RICO conspirators caused him approximately $70 million in injury through their racketeering activities.  The plaintiff also alleges that this money was reinvested in legitimate radio station businesses, in other unidentified businesses, in trust funds, and in the defendant entity Excelsior Capital, LLC.  However, the plaintiff alleges no injury from these alleged investments that is distinct from the injury caused by the racketeering activity itself.  To the extent that the plaintiff alleges that the investment of racketeering proceeds allowed Devine to continue the RICO enterprise, this is not a distinct injury within the Second Circuit for purposes of Subsection 1962(a).  See, e.g., Kaczmarek, 30 F. Supp. 2d at 628–29.

Similarly, to the extent that the plaintiff suggests that investment of the racketeering proceeds hinders his recovery of assets, the Court finds that this also does not constitute an injury separate from the alleged predicate acts.  Finding that the plaintiff has not alleged a distinct and separate injury to himself derived from the investment of the alleged racketeering-produced funds, the Court grants Devine's motion to dismiss the plaintiff's Subsection 1962(a) claim.

### c. Subsection 1962(d)

18 U.S.C. § 1962(d) makes it illegal to conspire to violate any of the other provisions of Section 1962.  The plaintiff has asserted a Subsection 1962(d) claim against Devine, and Devine has moved to dismiss it solely on the grounds that the plaintiff has asserted no valid Subsection 1962(a) or (c) claim.  As the Court has found that the plaintiff has asserted a valid Subsection 1962(c) claim, Devine's motion to dismiss the plaintiff's Subsection 1962(d) claim is without basis.  The Court therefore denies Devine's motion to dismiss the plaintiff's Subsection 1962(d) claim.

### 3. State Law Claims

The Devine Moving Defendants also move to dismiss the state law claims asserted against them on grounds that the Court should not exercise supplemental jurisdiction over these claims because no valid federal claims have been pleaded.  The Court having found valid federal claims pled pursuant to RICO, the Court elects to exercise its supplemental jurisdiction over the state law claims asserted against the Devine Moving Defendants, and thus denies the motion to dismiss those claims.

21

**C. As to Defendant Buzil's Motion to Dismiss for Lack of Personal Jurisdiction**

Defendant Buzil separately moves to dismiss all claims asserted against him for lack of personal jurisdiction.  The plaintiff also opposes this motion.

Buzil's status as a party in this case has followed a long path.  In his initial complaint, the plaintiff named Buzil as a defendant.  However, on March 24, 2009, the plaintiff voluntarily dismissed his claims against Buzil, without prejudice.  Then, in <u>Allen I</u>, the Court ordered the plaintiff to re-join Buzil as a defendant with respect to the plaintiff's constructive trust claim and request for injunctive relief.  The plaintiff complied on December 15, 2009, filing an amended complaint re-naming Buzil as a defendant.  Now, Buzil moves to dismiss all claims against him for lack of personal jurisdiction.

Buzil contends that the doctrine of collateral estoppel precludes this Court from exercising personal jurisdiction over him.  Buail bases this contention on a finding in a related case in New York Supreme Court, Nassau County, in which a justice found that Buzil had insufficient contacts with New York to assert long arm jurisdiction over him.  The plaintiff disagrees, and maintains that the related proceeding was not sufficiently similar or complete so as to preclude this Court from exercising personal jurisdiction over Buzil.

The prior case at issue was commenced in 2007 before Justice Joel K. Asarch in New York Supreme Court, Nassau County.  In that case, the wife of present plaintiff Robert Allen sought the appointment of their son, Luke Allen, as guardian for Robert Allen, pursuant to New York Mental Hygiene Law Article 81.  <u>In the Matter of the Application of Grace A.</u>, No. 28594-I-07 at 2 (N.Y. Sup. Ct. Nassau

Cty. Mar. 27, 2008).  In the first part of that case, Judge Asarch granted the

application for the appointment of Luke Allen as Robert Allen's guardian.  Then,

Luke Allen moved pursuant to New York Mental Hygiene Law Section 81.23(b)(1)

to enjoin both Devine and Buzil from transferring or disposing of any of Robert

Allen's property that they had acquired from him while he was mentally infirm.  Id.

   In seeking this injunction, Luke Allen presented largely the same facts that he

asserts in the present case.  That is, Luke Allen's assertion was that that Devine

befriended Robert Allen, induced Robert Allen to transfer money to Superior, and

then fraudulently diverted this money elsewhere.  Luke Allen also asserted that Buzil

owned portions of, and was an officer for, both Superior and many of the entities that

received Robert Allen's allegedly stolen funds.  Luke Allen further asserted that Buzil

had admitted to making several visits to Robert Allen at his home in New York, and

to having made several telephone calls to him.  Finally, Luke Allen argued that

personal jurisdiction was proper over Buzil based in part on his status as a co-

conspirator of Devine.

   Ultimately, Justice Asarch granted a temporary injunction preventing Devine

from, among other things, selling or otherwise transferring any property rightfully

owned by Allen.  Grace A., No. 28594-I-07 at 16–17.  However, Justice Asarch found

that a lack of personal jurisdiction over Buzil prevented the court from entering any

order regarding him.  In particular, Justice Asarch found that Buzil had insufficient

contacts with New York to satisfy the requirements of due process, thereby making

the exercise of personal jurisdiction over Buzil improper.  Id. at 12.

Generally, federal courts in the Second Circuit give prior state court decisions the same preclusive effect that a court of that state would give such a decision. Colon v. Coughlin, 58 F.3d 865, 869, n.2 (2d Cir. 1995). Thus, to determine the preclusive effect that Justice Asarch's decision will have on this Court, the Court looks to New York state law.

New York law provides that "collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." Leather v. Eyck, 180 F.3d 420, 425 (2d Cir. 1999) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647, 651 (1999)) (internal quotations and alterations omitted). This is true "whether or not the tribunals or causes of action are the same." Id. However, under New York law, a previous decision by a court should only be given preclusive effect if the prior proceeding was fully litigated. In determining whether a case has been fully litigated, courts have cautioned that an interim decision is not entitled to preclusive effect. See Metromedia Co. v. Fugazy, 983 F.2d 350, 365 (2d Cir. 1992). Similarly, in addressing this issue, a court must consider, "the size of the [prior] claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." King, 418 F.3d at 130 (quoting Gilberg v. Barbieri, 53 N.Y.2d 285, 292, 441 N.Y.S.2d 49, 51, 423 N.E.2d 807 (1981)).

In sum, for a previous determination to be given preclusive effect under New York Law: (1) the issue must have been plainly raised in the prior proceeding, and (2)

the issue must have been fully litigated, including the entry of a final order with

respect to the relevant issue.  See also Franklin Development Co., Inc. v. Atlantic

Mut. Ins. Co., 60 A.D.3d 897, 899, 876 N.Y.S.2d 103 (2d Dep't 2009).

*Identity of Issues*

Addressing these prongs in turn, the Court first finds that the issue of personal

jurisdiction over Buzil raised in the state court proceeding is identical to the personal

jurisdiction issue presented to this Court.  The plaintiff challenges this conclusion,

based in part on the fact that the causes of action before this Court differ from the

relief sought in the Supreme Court.  As the plaintiff correctly points out, personal

jurisdiction generally must be established separately for each cause of action that a

plaintiff seeks to assert.  See Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 24

(2d Cir. 2004).  Thus, the plaintiff contends that the lack of identity of legal claims in

the two cases renders the doctrine of collateral estoppel inapplicable.  Further, the

plaintiff argues that Justice Asarch did not consider sufficient evidence of Buzil's

contacts with New York, or consider whether personal jurisdiction over Buzil was

appropriate pursuant to RICO.

While it is true that the causes of action in this case are not identical to the

relief requested in the prior case, the Second Circuit has held that this does not bar the

application of the doctrine of collateral estoppel.  Leather, 180 F.3d at 425.

Moreover, Justice Asarch's finding with respect to Buzil did not focus on any

particular cause of action, or any particular statutory basis for personal jurisdiction.

Rather, Justice Asarch found that Buzil's role in the alleged scheme failed to satisfy

the due process requirements for haling Buzil into a New York court.  See Grace A.,

No. 28594-I-07 at 12.  Regardless of the causes of action or the bases of jurisdiction that the plaintiff asserts, this Court must ultimately address the same issue that Justice Asarch did: whether the facts alleged satisfy the due process clause with respect to Buzil's presence in a New York court.  The operative question here therefore does not relate to causes of action or jurisdictional statutes, but rather to whether Justice Asarch analyzed the same *facts* that are presently before the Court in deciding this issue.

Having reviewed both the amended complaint and the submissions made to Judge Asarch, it is the Court's view that Justice Asarch did analyze the same material facts that are before this Court with respect to due process for Buzil.  In both cases, Buzil is not alleged to have spent any significant time in New York, and in neither case does the plaintiff allege that Buzil deceived the plaintiff separately from Devine. While the plaintiff's amended complaint provides more details of the alleged scheme than were presented to Justice Asarch, the Court finds that Buzil's role in both instances is alleged to be materially the same.  Thus, the Court finds that the first prong of the collateral estoppel test is satisfied, and that there is an identity of issues between the state court proceeding and the present proceeding.

*Whether the Issue was Fully Litigated in the State Court Proceeding*

The Court next addresses whether the New York Supreme Court proceeding was "fully litigated" for purposes of collateral estoppel.  The first part of this prong requires the Court to determine whether Justice Asarch's order was final with respect to the issue of personal jurisdiction over Buzil.  Here, the Court is easily satisfied that it was final.  While it is true that the decision in Grace A. granted only a temporary

injunction against Devine, the order also definitively found that the court had no personal jurisdiction over Buzil.  Thus, at least with respect to this jurisdictional issue, Justice Asarch's decision was final.

With respect to the other aspects of whether a previous proceeding was fully litigated, the Court considers the following factors: "[1] the size of the claim, [2] the forum of the prior litigation, [3] the use of initiative, [4] the extent of the litigation, [5] the competence and experience of counsel, [6] the availability of new evidence, [7] indications of a compromise verdict, [8] differences in the applicable law and [9] foreseeability of future litigation."  King, 418 F.3d at 130.

Here, most of these factors suggest that the issue was fully litigated in the state court.  In the previous case, the plaintiff sought an injunction covering approximately $88 million in funds and assets, compared to approximately $70 million in the present case.  Thus, the issue of size of claim favors Buzil.  Similarly, it was the plaintiff who initiated the previous proceedings and attempted to hale Buzil into a New York court.  Further, as discussed above, the Court does not see any material difference in the evidence and allegations relied on here as compared to what the court relied on in the previous proceeding.  Likewise, the applicable law—the due process clause of the federal constitution—applies to both the previous and present case.  In addition, the plaintiff was represented in the prior proceeding by a major international law firm, and there is no indication of a "compromise verdict" there. Finally, as the plaintiff alleged a loss of tens of millions of dollars in the prior litigation but did not yet seek to recover those funds, it is the Court's view that a reasonable plaintiff would have foreseen future litigation concerning the issue.

The plaintiff's remaining arguments sound primarily with the two factors not yet addressed: the forum of the litigation and its extent.  The plaintiff points out that he never even filed a formal complaint against Buzil in the prior proceeding, but rather merely moved to enjoin Buzil based on affidavits and a memorandum of law.  The plaintiff also asserts that the litigation was by necessity abbreviated, and that he was not permitted a full opportunity to marshal evidence in his favor.  Similarly, the plaintiff asserts that Justice Asarch did not consider Buzil's "relationships with New York hedge funds [and] his execution of guarantees in New York" in determining personal jurisdiction.  (Am. Compl. at 23.)

Having reviewed the relevant documents, the Court finds none of these arguments convincing.  First, while there was no complaint filed against Buzil in the state court proceeding, the Court does not view this formality as controlling.  The plaintiff raised the issue of personal jurisdiction before Justice Asarch in papers that served a function analogous to a complaint, and Justice Asarch does not appear to have discredited any of the plaintiff's factual allegations concerning Buzil.  The lack of a formal complaint is therefore not relevant.  Relatedly, although the plaintiff bemoans his inability to present evidence in the state court proceeding, the Court has already noted that it does not view the plaintiff's present allegations regarding Buzil's role in the alleged scheme as materially different from the role presented to Justice Asarch.  Therefore, the plaintiff's asserted inability to present evidence is not material.  The sole exception appears to be the plaintiff's suggestion that Buzil had "relationships with New York hedge funds" and "execut[ed] guarantees in New York," and that Justice Asarch did not consider these contacts with the state.  (Am.

Compl. at 23.)  However, neither of these allegations appear in the complaint, nor has evidence of either been presented to the Court.  This Court therefore similarly cannot consider these factors.

In <u>Allen I</u>, this Court found that personal jurisdiction in New York over Buzil was proper.  However, the Court has now been presented with Justice Asarch's previous decision on the same issue, in which Justice Asarch entered a final, fully litigated decision finding *no* New York personal jurisdiction over Buzil.  Applying the appropriate New York law of collateral estoppel, the Court must now accede to Justice Asarch's determination, and find that there is no New York personal jurisdiction over Buzil.  The Court therefore grants Buzil's motion to dismiss for lack of personal jurisdiction, and dismisses the claims against him without prejudice to refile in a court of competent jurisdiction.

*Application of Rule 19*

The Court's ruling on Buzil's motion also requires the Court to revisit its previous ruling on the defendants' earlier motion to dismiss pursuant to Fed. R. Civ. P. 19.  Now that the Court has ruled that Buzil's joinder is not feasible, the Court must also consider the implications of Rule 19(b), which provides:

> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

In <u>Allen I</u>, the Court held that Buzil was a necessary party with respect to the plaintiff's claim for a constructive trust and related equitable relief, because the plaintiff had alleged that a portion of the assets he sought to be placed under constructive trust were in Buzil's possession.  Rule 19 requires the joinder of such a necessary party, provided that the joinder of that party is feasible.

However, if joinder is not feasible, Rule 19 requires the Court to determine whether the plaintiff may nevertheless proceed on the relevant claims *without* joining the necessary party.  Here, Buzil is a necessary party with respect to the constructive trust claim, but he cannot be joined in the case.  Applying the factors that Rule 19 sets forth, the Court finds that it would not be proper to permit the plaintiff to proceed on his claim for constructive trust or his request for related equitable relief without joining Buzil.  The Court sees no way that the constructive trust that the plaintiff requests could be granted as requested in this case without unfairly prejudicing Buzil, who allegedly holds at least some of the assets that would be placed under trust.  The Court further finds that there are no reasonable means to avoid this outcome.

However, as the plaintiff's constructive trust claim and request for equitable relief form only a portion of his petition, the Court is satisfied that the dismissal of

these claims alone would not render the plaintiff unable to fully recover against the remaining defendants.  The Court therefore *sua sponte* dismisses the plaintiff's constructive trust claim as to all defendants, and *sua sponte* denies the plaintiff's request for equitable relief, pursuant to Rule 19(b).

> *Effects of Dismissal on Davis, Excelsior, and Superior*

Finally, the only claim asserted against defendants Davis and Excelsior Capital, LLC is the claim for constructive trust.  As the Court dismisses this claim with respect to all defendants, the motion by Davis and Excelsior Capital, LLC to dismiss this claim against them is mooted.  Further, as the only claim asserted against Superior is the claim for constructive trust, Superior is also now dismissed as a defendant.

### D. As to the Motion by Defendant D&B Towers to Dismiss for Lack of Personal Jurisdiction

In <u>Allen I</u>, the Court denied a previous motion by D&B Towers to dismiss for lack of personal jurisdiction and failure to state a claim.  Defendant D&B Towers now moves for a second time to dismiss the plaintiff's claim against it for lack of personal jurisdiction.

Fed. R. Civ. P. 12 provides in pertinent part:

(g) Joining Motions . . .

> (2) Limitation on Further Motions. Except [by motion under Rule 7(a) or Rule 12(c), or at trial, or if the court determines it has no subject matter jurisdiction to hear a case], a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(h) Waiving and Preserving Certain Defenses.

>        (1) When Some Are Waived. A party waives any defense
>        listed in Rule 12(b)(2)-(5) by:
>
>>             (A) omitting it from a motion in the circumstances
>>             described in Rule 12(g)(2) . . . .

In addition, this district's rule concerning motions for reconsideration provides that any motion for consideration must be filed "within ten (10) days after *the entry* of the court's determination of the original motion."  Local Civil Rule 6.3 (emphasis in original).

Here, D&B Towers previously moved to dismiss the claims against it pursuant to both Fed. R. Civ. P. 12(b)(2) and 12(b)(6), and the Court denied that motion in <u>Allen I</u>.  Then, more than two months after the entry of <u>Allen I</u>, D&B Towers filed a second motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).  The present motion to dismiss by D&B Towers is therefore precluded by Rule 12(g) and (h) as an improper subsequent motion to dismiss, and by Local Civil Rule 6.3 as an untimely motion for reconsideration.  The Court notes that the plaintiff's amendment of his complaint as to other defendants in this case does not affect the application of these rules, as the plaintiff did not amend any of his claims as to D&B Towers.  The Court thus denies the motion by D&B Towers to dismiss for lack of personal jurisdiction.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Devine Moving Defendants' motion to dismiss for failure to state a claim is granted with respect to the plaintiff's 18 U.S.C. § 1964(c) claim pursuant to 18 U.S.C. § 1962(a), and that claim is dismissed as to Devine; and it is further

**ORDERED** that the Devine Moving Defendants' motion to dismiss is denied in all other aspects; and it is further

**ORDERED** that defendant Bruce Buzil's motion to dismiss for lack of personal jurisdiction is granted, and all claims against Buzil are dismissed without prejudice to refile in a court of competent jurisdiction; and it is further

**ORDERED** that, pursuant to Fed. R. Civ. P. 19(b), the plaintiff's claim for a constructive trust and request for injunctive relief are dismissed without prejudice for failure to join an indispensable party; and it is further

**ORDERED** that the motion to dismiss by the Davis Moving Defendants is deemed mooted by the dismissal as to all parties of the plaintiff's claim for a constructive trust; and it is further

**ORDERED** that the motion by D&B Towers to dismiss for lack of personal jurisdiction is denied; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the caption in this case to read as follows:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
C. ROBERT ALLEN, III, by LUKE ALLEN, as Guardian
for the Property Management of C. Robert Allen III,

                         Plaintiff,

      -against-

CHRISTOPHER DEVINE, LAKESHORE MEDIA, LLC,
MILCREEK BROADCASTING LLC, COLLEGE CREEK
MEDIA LLC, MARATHON MEDIA GROUP, LLC, 3
POINT MEDIA – SALT LAKE CITY, LLC, 3 POINT
MEDIA DELTA, LLC, 3 POINT MEDIA – UTAH, LLC, 3
POINT MEDIA – FRANKLIN, LLC, 3 POINT MEDIA –
PRESCOTT VALLEY, LLC, 3 POINT MEDIA –
COALVILLE, LLC, 3 POINT MEDIA – ARIZONA, LLC,
3 POINT MEDIA – FLORIDA, LLC, 3 POINT MEDIA –
KANSAS, LLC, 3 POINT MEDIA – OGDEN, LLC, 3
POINT MEDIA – SANFRANCISCO, LLC, MIDVALLEY
RADIO PARTNERS, LLC, D&B TOWERS LLC,
SUPERIOR BROADCASTING OF NEVADA, LLC,
SUPERIOR BROADCASTING OF DENVER, LLC,
WACKENBURG ASSOCIATES, LLC, PORTLAND
BROADCASTING LLC, DESERT SKY MEDIA LLC,
SKY MEDIA LLC, DEVINE RACING MANAGEMENT,
LLC, ACB CONSULTING CO., and John Does 1-50,

                         Defendants.
-----------------------------------------------------------X

**SO ORDERED.**

Dated: Central Islip, New York
July 24, 2010

                             __*/s/ Arthur D. Spatt*_____
                               ARTHUR D. SPATT
                         United States District Judge