UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

C. ROBERT ALLEN, III by LUKE ALLEN, as Guardian for
the Property Management of C. Robert Allen, III,

                        Plaintiff,

             - against –

CHRISTOPHER DEVINE, *et al.*,

                    Defendants.

:   09-cv-0668
:   (ADS) (ETB)

------------------------------------------------------------------- x

CHRISTOPHER DEVINE, *et al.*,

                Third-Party Plaintiffs,

            - against -

LUKE ALLEN,

                Third-Party Defendant.

------------------------------------------------------------------- x

## THIRD-PARTY DEFENDANT LUKE ALLEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE THIRD-PARTY COMPLAINT

Alexandra Wald
Nathaniel P.T. Read
Harvey B. Silikovitz
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, NY 10022
(212) 957-7600
*Attorneys for Third-Party Defendant Luke Allen*

**TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................. 1

Background ................................................................................................................ 3

        The Main Complaint ....................................................................................... 3

        The Guardianship Application, And Justice Asarch's Orders ....................... 4

        The Third Party Complaint .............................................................................. 6

        Status of the Action ......................................................................................... 6

ARGUMENT ............................................................................................................. 6

POINT I      THE THIRD PARTY COMPLAINT IS NOT A
               PROPER IMPLEADER AND DOES NOT STATE
               A CLAIM FOR CONTRIBUTION ....................................................... 7

           A.     None Of The Liability Alleged Is Secondary Or
                   Derivative. ............................................................................................ 7

           B.     The Contribution Claim Is Irreconcilable With The
                   Main Complaint. .................................................................................. 8

           C.     Devine Fails To Adequately Plead Causation Or The
                   "Same Injury" ....................................................................................... 9

           D.     Dismissal of the Contribution Claim Compels Dismissal
                   of the Remaining Causes of Action Pursuant to
                   Fed. R. Civ. P. 18 ............................................................................... 11

POINT II     THE TORTIOUS INTERFERENCE AND CIVIL
               CONSPIRACY CLAIMS FAIL TO STATE A
                CLAIM IN ANY EVENT ..................................................................... 12

           A.     The Third Party Complaint Fails To State A Claim
                   For Tortious Interference With Business Expectancy. .................... 12

                1.     Devine pleads neither wrongful means,
                        nor malice. ................................................................................ 12

i

2.    The third party complaint alleges facts that
rebut malice……………………………………………………16

3.    The third party complaint concedes a lack
of actionable "injury" or the required "but
for" causation. …………………………………………………… 17

4.    Luke Allen cannot have tortiously interfered
with an Allen-Devine relationship. ………………………………… 20

B.    The Civil Conspiracy Claim Fails To State A Claim…………………………… 21

1.    Devine has no viable claim for an underlying tort. ………………… 21

2.    The counterclaim fails to state a claim for fraud…………………… 23

3.    A party cannot conspire with itself. …………………………………… 25

CONCLUSION ……………………………………………………………………………… 26

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.,*
    268 A.D.2d 101 (2d Dep't 2000) ........................................................................ 14

*American Preferred Prescription, Inc. v. Health Mgmt., Inc.,*
    252 A.D.2d 414 (1st Dep't 1998) ........................................................................ 18

*Andarko Petroleum Corp. v. Panhandle Eastern Corp.,*
    545 A.2d 1171 (Del. 1988) ................................................................................. 20

*Anderson News, L.L.C. v. American Media, Inc.,*
    732 F. Supp. 2d 389405 (S.D.N.Y. 2010) ........................................................... 21

*Ashcroft v. Iqbal,*
    556 U.S. __, 129 S. Ct. 1937 (2009) .................................................................. 6-7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999) ............................................................................... 10

*Bank of India v. Trendi Sportswear, Inc.,*
    239 F.3d 428 (2d Cir. 2000) ................................................................................. 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 6

*Benjamin v. Kim,*
    No. 95 Civ. 9597 (LMM), 1996 WL 728373 (S.D.N.Y. Dec. 18, 1996) ................... 8

*Bozsi Ltd. P'ship v Lynott,*
    676 F. Supp 505 (S.D.N.Y 1987) .......................................................................... 3

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,* 98 F.3d 13 (2d Cir. 1996) ..................... 24

*Carvel Corp. v. Noonan,*
    3 N.Y.3d 182 (2004) .......................................................................................... 16

*Carvel v. Carvel Found. Inc.,*
    230 F. App'x 103 (2d Cir. 2007) ......................................................................... 22

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.,*
    217 F. Supp. 2d 423 (S.D.N.Y. 2002) .................................................................. 18

*DiFolco v MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)......................................5, 7

*Doucette v. Vibe Records, Inc.*,
   233 F.R.D. 117 (E.D.N.Y. 2005) ...........................................................7-8

*Fashion Shop LLC v. Virtual Sales Grp. Corp.*,
   525 F. Supp. 2d 436 (S.D.N.Y. 2007), *aff'd*, 323 F. App'x 96 (2d Cir. 2009) ........................11

*Finley v. Giacobbe*,
   79 F.3d 1285 (2d Cir. 1996)...........................................................................20

*Foley v. D'Agostino*,
   21 A.D.2d 60 (1st Dep't 1964).......................................................................20

*Friedman v Coldwater Creek, Inc.*, 321 F. App'x 58 (2d Cir. 2009) ...........................12

*Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*,
   313 F. Supp. 2d 339 (S.D.N.Y. 2004)............................................................14

*Ginx, Inc. v. Soho Alliance*,
   720 F. Supp. 2d 342 (S.D.N.Y. 2010).............................................................14

*Golden Pacific Bancorp v. FDIC*,
   273 F.3d 509 (2d Cir. 2001)...........................................................................10

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
   17 F. Supp. 2d 275 (S.D.N.Y.1998)................................................................19

*Groman v. Cola*,
   No. 07 Civ. 2635 (RPP), 2007 WL 3340922 (S.D.N.Y. Nov. 7, 2007)...................23

*Gruntal & Co. v. San Diego Bancorp*,
   No. 94 Civ. 5366 (DC), 1996 WL 343079 (S.D.N.Y. June 21, 1996).....................16

*Hargrave v. Oki Nursery, Inc.*,
   636 F.2d 897 (2d Cir. 1980)...........................................................................10

*HAS Residential Mortg. Servs. of Tx. v. Casuccio*,
   350 F. Supp. 2d 352 (E.D.N.Y. 2003) ..............................................................5

*Hassan v. Deutsche Bank A.G.*,
   515 F. Supp. 2d 426 (S.D.N.Y. 2007), *aff'd*, 336 F. App'x 21 (2d Cir. 2009) ...................16-17

*In re Agape Litig.*,
   No. 09-CV-1782 (ADS) (AKT), 2011 WL 1136173 (E.D.N.Y. Mar. 29, 2011) ......................7

*Kahn v. Salomon Bros. Inc.*,
   813 F. Supp. 191 (E.D.N.Y. 1993) ................................................................18

*Kennedy v. Trustees of Testamentary Trust of Will of Kennedy,*
  2010 WL 4250155 (2d Cir. Oct. 28, 2010) .................................................................. 22

*Kirch v. Liberty Media Corp.,*
  449 F.3d 388 (2d Cir. 2006) .......................................................................................... 21

*Lewis v. Friedman-Marks Clothing Co.,*
  70 A.D.2d 866 (1st Dep't 1979) .................................................................................... 25

*Lyndonville Sav. Bank & Trust Co. v. Lussier,*
  211 F.3d 697 (2d Cir. 2000) .......................................................................................... 22

*Marshall v. Marshall,*
  547 U.S. 293 (2006) ...................................................................................................... 22

*Matsushita Elecs. Corp. v. Loral Corp.,*
  974 F. Supp. 345 (S.D.N.Y. 1997) ................................................................................ 13

*Pacs Indus., Inc. v. Cutler-Hammer, Inc.,* 103 F. Supp. 2d 570 (E.D.N.Y. 2000) .. ....................... 24

*Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.,*
  No. 09 Civ. 7911 (RJS), 2011 WL 310170 (S.D.N.Y. Jan. 21, 2011) ............................. 9

*Phillips v. Carter,*
  58 A.D.3d 528 (1st Dep't 2009) .................................................................................... 17

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
  508 U.S. 49 (1993) ............................................................................................ 13-14, 16

*Quinn v Teti,*
  No. 99-9433, 234 F.3d 1262 (2d Cir. Oct. 27, 2000) ...................................................... 10

*Raquet v. Braun,*
  90 N.Y.2d 177 (1997) ...................................................................................................... 9

*RSM Prod. Corp. v. Fridman,*
  387 F. App'x 72 (2d Cir. 2010) ...................................................................................... 17

*RSM Prod. Corp. v. Fridman,*
  643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd,* 387 F. App'x 72 (2d Cir. 2010) ................... 12, 19

*Shields v Citytrust Bancorp, Inc.,* 25 F. 3d 1124 (2d Cir 1994) ........................................... 24

*Skolnick v Goldberg,*
  291 A.D.2d 274 (1st Dep't 2002) ............................................................................ 20-21

*Smith v. Sapienza,*
  52 N.Y.2d 82 (1981) .................................................................................................... 8-9

*Steinberg v Sherman*,
   No. 07 CIV. 1001 (WHP), 2008 WL 2156726 (S.D.N.Y. May 8, 2008) ................................ 11

*Steinberg v. Schnapp*,
   73 A.D.3d 171 (1st Dep't 2010)........................................................................................ 20

*Suburban Restoration Co. v. ACMAT Corp.*,
   700 F.2d 98 (2d Cir. 1983)................................................................................................ 14

*Svenska Finans Int'l BV v. Scolaro, Shulman, Cohen, Lawler & Burstein, P.C.*,
   37 F. Supp. 2d 178 (N.D.N.Y. 1999) ................................................................................ 10

*Turner v Borobio*,
   No. 01 CIV. 7458 (SAS), 2001 WL 1602965 (S.D.N.Y. Dec. 14, 2001).................... 17, 20, 25

*Vigoda v DCA Prods. Plus Inc.*,
   293 A.D.2d 265 (1st Dep't 2002)...................................................................................... 18

*World Wrestling Fed'n Entmt, Inc. v. Bozell*,
   142 F. Supp. 2d 514 (S.D.N.Y. 2001)............................................................................... 21

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................... 1, 6

Fed. R. Civ. P. 14(a)........................................................................................................ 7, 11

Fed. R. Civ. P. 18 ............................................................................................................. 11

**Statutes**

New York Mental Hygiene Law §81.02(a)(2)...................................................................... 15

New York Mental Hygiene Law § 81.09. ........................................................................... 15

New York Mental Hygiene Law § 81.23(b)(1).................................................................. 5, 15

**Treatises**

27A Carmody-Wait 2d New York Practice § 159:3 .............................................................. 22

**Other Authorities**

Law Revision Comments to N.Y. Mental Hygiene Law § 81.09 ............................................. 15

Third-party defendant Luke Allen, by his attorneys, Cohen & Gresser LLP, submits this memorandum of law in support of his motion for an order pursuant to Fed. R. Civ. P. 12(b)(6), 14, 18 and 12(b)(1), dismissing the third-party complaint dated December 20, 2010 (the "Third Party Complaint" or "TPC").

### Preliminary Statement

The complaint in this case alleges a fraud carried out by Defendant/Third Party Plaintiff Christopher Devine ("Devine") and co-conspirators against Plaintiff C. Robert Allen III ("Allen"). Devine's Answer admits that he took $70 million from Allen, mainly via wire transfers by Allen to Superior Broadcasting Co. ("Superior"), a company of which Allen was the majority shareholder and Devine was President and a director. Plaintiff alleges that almost as quickly as Allen wired money in, Devine and his partner and fellow director Bruce Buzil ("Buzil") used Allen's money to line their own pockets, pay their own obligations, and fund the operations of their own network of limited liability companies (collectively, the "Devine/Buzil LLCs,"), in which – unlike Superior – Allen had no interest. Amended complaint dated December 15, 2009 ("Main Complaint" or "Am. Compl., Exhibit A to the Wald Decl.) at ¶¶ 7, 11, 12, 100, 115, 153, 157.

Though not denying that the money was taken, Devine's Third Party Complaint alleges that Devine was induced to accept Allen's money and spend it on himself and his own companies pursuant to an oral agreement, which was memorialized some six years and dozens of millions of dollars after the fact. The terms of the alleged Devine-Allen contract included complete indemnification of Devine by Allen for any and all wrongdoing against Allen, Superior and third parties. According to Devine, Allen also contracted never to have any right of recovery against: (i) Devine personally; (ii) any asset purchased with Allen's money; or (iii) the proceeds of sale of such assets. Devine characterizes this remarkable arrangement as a fraudulent scheme

against *him* by Allen, in "conspiracy" with his son Luke. This clever conspiracy took the form of lulling Devine into accepting Allen's money and using it to purchase hard assets in which Allen had no interest, while the now-deceased Allen was left to chase Devine through the courts.

Third Party Defendant could not more strongly deny Devine's story. Even accepting the allegations of the Third Party Complaint as required for purposes of this motion, however, the Third Party Complaint should be dismissed as a matter of law.

*First,* the Court can resolve this entire motion on the basis that the entire Third Party Complaint fails to plead any theory of relief that is either "derivative or secondary" of Plaintiff's claims. Accordingly, no viable basis exists for either third party or supplemental jurisdiction under Federal Rules of Civil Procedure 14 and 18.

*Second,* the contribution claim also fails substantively. Rather than setting forth a way that Luke Allen could have liability that is "derivative or secondary" of Devine's, the contribution claim merely denies that Devine has any liability at all. As a result, the contribution claim fails to plead joint causation of "the same injury" as required to state a contribution claim.

*Third,* the tortious interference claim is fatally flawed in numerous respects. The Third Party Complaint fails to plead "but for" causation as required to state a claim for tortious interference, and indeed pleads facts that establish the lack of any such causation and warrant dismissal under the law of this Circuit. The acts by Luke Allen alleged to be "wrongful means" are privileged under the *Noerr-Pennington* doctrine or were not directed to third parties as required for this tort. And the Third Party Complaint's allegations incorporate facts sufficient to justify dismissal of the conclusory allegation that Luke Allen acted "solely with malice" in seeking to prevent Devine from dissipating Allen's monies.

*Finally,* the civil conspiracy claim (which is premised on the underlying tort of fraud as alleged in a state law counterclaim against the late Allen) must be dismissed for both jurisdictional and substantive failings.  The many substantive defects of Devine's counter-claim are beyond the scope of this application to address in full.  Critically for purposes of this motion to dismiss, however, Devine's fraud counter-claim seeks damages against an estate in probate.  Hence, that claim is barred by the probate exception to Federal jurisdiction.  Because this Court lacks subject matter jurisdiction over the fraud counterclaim, the related civil conspiracy claim necessarily fails.

For all the foregoing reasons, Third Party Defendant respectfully requests dismissal of the Third Party Complaint in its entirety.

## Background

### *The Main Complaint*

Because the Third Party Complaint purports to state a claim for contribution, its allegations are therefore "necessarily intertwined" with those of the main complaint.  *Bozsi Ltd. P'ship v Lynott,* 676 F. Supp. 505, 515 (S.D.N.Y 1987) (citing *FDIC v. Nat'l Surety Corp.,* 434 F. Supp. 61, 64 (E.D.N.Y.1977)).  The operative Complaint in this action alleges a fraud on Allen by Devine and related entities, whereby Devine fraudulently induced Allen to wire over $70 million dollars to Superior, a Delaware company of which Allen was a majority shareholder and of which Devine was President and a Director.  (Answer dated December 20, 2010 ("Answer"), Exhibit B to the Wald Decl., at ¶ 75, 80 (admitting that Allen had a majority interest in Superior and that Devine was President and Director); Am. Compl. ¶¶ 4-12, 75-100, 133-42, 147-48).  The Main Complaint pleads that Devine preyed on the frail and mentally deteriorating Allen and solicited his confidence.  (*Id.* at ¶¶ 11, 65, 72).

3

It is undisputed that "Superior did not own and never purchased a single radio station," and that Devine and his business partner Buzil controlled its financial records. Answer ¶¶ 6, 170, 81. As alleged in the Main Complaint, Devine made false representations that Superior was a thriving radio business, substantiated with false weekly financial statements depicting Superior as a thriving company with receivables and assets. In reality, however, Superior was a shell company with no assets or operations. Am. Compl. ¶¶ 6, 84-85, 88, 92.

The Main Complaint asserts claims against Devine under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and for common law fraud and breach of fiduciary duty, and claims against Devine and certain entities in which Devine had or has an interest (collectively, the "Devine Defendants") for civil conspiracy, conversion and unjust enrichment. As this Court has noted, the gist of the Main Complaint includes averments that "during th[e] entire time period" of early 2002 through late 2006, "members of the RICO conspiracy laundered the money [Allen] had wired to Superior . . . by, among other things, freely transferring it among businesses controlled by Devine and Buzil . . . for the purpose of hiding the source of the funds." *Allen ex rel. Allen v. Devine*, 726 F. Supp. 2d 240, 249-50 (E.D.N.Y. 2010) (docket no. 175).

### *The Guardianship Application, And Justice Asarch's Orders*

As noted above, the Third Party Complaint alleges wrongdoing by Luke Allen via participation in, and obtaining of an injunction in, a guardianship proceeding captioned *In the Matter of the Application of Grace A., as Petitioner, Pursuant to Article 81 of the Mental Hygiene Law for the Appointment of a Guardian for C. Robert A., III, an Alleged Incapacitated Person*, Index No. 28594-I-07 (the "Guardianship Proceeding"). Grace Allen, Allen's wife, commenced that proceeding in 2007. *See* Answer ¶ 66 (admitting that "Grace Allen commenced a suit to have CRA, III declared of diminished capacity").

4

REDACTED

Justice Asarch's injunction order is referenced in the Third Party Complaint (¶¶ 15, 24), and accordingly may be considered for purposes of this motion. *See DiFolco v MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (on motion to dismiss, court may consider quoted and referenced documents and those "integral" to complaint); *see also HAS Residential Mortg. Servs. of Tx. v. Casuccio*, 350 F. Supp. 2d 352, 361 (E.D.N.Y. 2003) (Spatt, J.) "[I]t is proper to take judicial notice of pleadings . . . to establish the fact of such litigation and related filings.") (citation and internal quotation marks omitted).  The injunction order states that

REDACTED

REDACTED

### The Third Party Complaint

The Third Party Complaint purports to allege three causes of action: (i) contribution based on Luke Allen's 2007 frustration of Devine's plan to "recoup" Allen's monies; (ii) tortious interference with the "business relationship" between Devine and Allen by the acts of commencing or participating in the 2007 guardianship proceeding, obtaining an injunction that prevented Devine from disposing of assets purchased with Allen's money, and removing Devine as President of Superior in 2007; and (iii) civil conspiracy, alleging an agreement between Luke Allen and Allen "to carry out unlawful acts against Devine" by means of the "fraudulent acts" that are alleged in Devine's Answer and counterclaims against Allen.

### Status of the Action

Allen passed away on March 9, 2011. Wald Decl. Ex. E (suggestion of death upon the record). No person has substituted for Allen as of the date of this filing.

### ARGUMENT

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. A complaint must consist of more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible," the complaint must be dismissed. *Id.* at

570; *In re Agape Litig.*, No. 09-CV-1782 (ADS) (AKT), 2011 WL 1136173, at *6 (E.D.N.Y. Mar. 29, 2011) (Spatt, J.) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [and] only a complaint that states a plausible claim for relief survives a motion to dismiss") (internal quotation marks and brackets omitted). A viable complaint "'demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *DiFolco*, 622 F.3d at 111 (quoting *Iqbal*, 129 S. Ct. at 1949).

**POINT I**

**THE THIRD PARTY COMPLAINT IS NOT A PROPER IMPLEADER AND DOES NOT STATE A CLAIM FOR CONTRIBUTION**

**A.    None Of The Liability Alleged Is Secondary Or Derivative.**

Fed. R. Civ. P. 14(a) permits a defendant to sue a third party who may be liable to the defendant for all or part of a plaintiff's claim against that defendant. However, such liability must be derivative of or secondary to that of the defendant in the main action. *See Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000) (impleader requires secondary liability) (citations and internal quotation marks omitted); *accord Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 120 (E.D.N.Y. 2005) (Spatt, J.) ("It is well-settled that a third-party action, also known as an impleader action, must be dependent on, or derivative of, the main claim . . . . A third-party complaint is a narrow device and cannot be used to bring in other matters that may have some relationship to the case.") (citations and internal quotation marks omitted). That is, the main defendant must find some theory under which – *even if his or her liability to the plaintiff is established* – the third party defendant contributed to the same harm. This basic requirement for a third party action is not met in the present case.

As set forth above, the Main Complaint seeks damages for the misappropriation of Allen's monies by the Devine Defendants. The Third Party Complaint fails to plead any theory

7

of liability that is derivative or secondary of the misconduct alleged in the Main Complaint. Instead, the Devine Defendants deny that misconduct, proclaim their own purported victimization by Allen and Luke Allen, and allege that "Luke Allen . . . is to blame" for Allen's losses, not the Devine Defendants.  TPC ¶¶ 4, 13, 18, 19.

Because the Devine Defendants deny any liability at all, the liability asserted in the third party claims obviously cannot be "derivative or secondary" of the Devine Defendants' liability, as required for a valid impleader.  Accordingly, the Third Party Complaint should be dismissed in its entirety.  *See Doucette*, 233 F.R.D. at 121 (where defendant brought third party claims for, *inter alia*, tortious interference and civil conspiracy, this Court dismissed the third party complaint with prejudice because "the claims in the third-party complaint [could] []not allege that the Third-Party Defendants are jointly liable to [the plaintiff in the main complaint]"; this Court held that "the third-party action is improper pursuant to Rule 14(a) because it is not derivative of or dependent upon the main claim asserted by [the plaintiff].").

**B.      The Contribution Claim Is Irreconcilable With The Main Complaint.**

Not only does the Third Party Complaint fail to plead secondary or derivative liability, joint liability cannot exist under both Complaints because they plead inconsistent facts.  Count I, titled "Contribution," alleges that Devine is the injured party and that he acted at all times with "best efforts" to carry out a business plan.  TPC at ¶¶ 12.  It is Luke Allen, Count I contends, who frustrated that plan and therefore "is to blame" for Allen's losses.  TPC at ¶ 18.  It is axiomatic under CPLR 1401, however, that "[a] claim for contribution cannot stand unless the third-party plaintiff and the third-party defendant are *both* subject to liability to the injured party."  *Benjamin v. Kim*, No. 95 Civ. 9597 (LMM), 1996 WL 728373, at *2 (S.D.N.Y. Dec. 18, 1996) (emphasis added; citations omitted); *accord Smith v. Sapienza*, 52 N.Y.2d 82, 87 (1981)

8

("A claim for contribution exists only when two or more tort-feasors share in responsibility for an injury, in violation of duties they respectively owed to the injured person.").

Far from being "secondary or derivative" of the main claims, the contribution claim affirmatively and irreconcilably *contradicts* them. As a practical matter, there can be no judgment to which Luke Allen could contribute until Devine (and his related co-defendants) have been found liable to Allen. But such a finding of liability will necessarily be predicated on a determination that Devine acted wrongfully and with bad intent, so as to make Devine liable for one or more violations of RICO, fraud, conversion, breach of fiduciary duty in the form of misappropriating funds, or unjust enrichment. Such a determination is fundamentally irreconcilable with the basic premise of the Third Party Complaint, *i.e,* that Devine is the victim of an evil conspiracy pursuant to which Luke Allen, not Devine, "is to blame" for any damages. TPC at ¶¶ 12-13. Because the contribution allegations are neither derivative of nor secondary to wrongdoing by the Devine Defendants pleaded in the Main Complaint – but rather baldly contradict the Main Complaint – the Third Party Complaint should be dismissed.

C.   **Devine Fails To Adequately Plead Causation Or The "Same Injury."**

The Main Complaint pleads that Allen transferred monies to Devine from 2000 to 2005. The Third Party Complaint alleges that Luke Allen sought an injunction and removed Devine as part of guardianship proceedings in 2007.

Under New York law, "[a] critical requirement for apportionment by contribution under CPLR article 14 is that the breach of duty by the contributing party must have had a part in *causing or augmenting* the injury for which contribution is sought." *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997) (emphasis added; citations and internal quotation marks omitted); *accord Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.*, No. 09 Civ. 7911 (RJS), 2011 WL 310170, at *3 (S.D.N.Y. Jan. 21, 2011) (same). In the present case, Allen's injury as alleged in

the Main Complaint was complete when Devine misappropriated Allen's monies by fraud or in breach of fiduciary duties – acts in which Luke Allen is not alleged by Devine to have played any part.

As pleaded in the Main Complaint, Allen was injured when Devine fraudulently obtained funds and/or breached his fiduciary duties by inducing Allen to transfer money to a company based on statements that were false and an ongoing pattern of deceit. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999) (injury from fraud is incurred when money is transmitted to wrongdoer); *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 900 (2d Cir. 1980) ("immediate" injury from misrepresentation occurs upon payment of money to fraudster). The same holds true for conversion, breach of fiduciary duty, and unjust enrichment. *See Svenska Finans Int'l BV v. Scolaro, Shulman, Cohen, Lawler & Burstein, P.C.*, 37 F. Supp. 2d 178, 184 (N.D.N.Y. 1999) (conversion claim springs into being when the money is wrongfully transferred); *id.* (time to bring breach of fiduciary duty claim runs from when the last wire transfer took place); *Quinn v Teti*, No. 99-9433, 234 F.3d 1262, at *3 (2d Cir. Oct. 27, 2000) (under New York law, which applies to all breach of fiduciary duty claims other than those based on Delaware law, breach of fiduciary duty claim is complete when the breach occurs); *Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 520 (2d Cir. 2001) (unjust enrichment claim accrues upon commission of act triggering duty of restitution). Thus, Allen's injury as pleaded in the Main Complaint was complete (apart from punitive damages, interest or other opportunity costs) when he made his final transfer in 2005. Luke Allen's alleged conduct in 2007 could not have "caused or augmented" Allen's injury.

Indeed, the Third Party Complaint does not even plead that Luke Allen caused the "same injury" pleaded in the Main Complaint, as required to state a claim for contribution. *See*

10

*Steinberg v Sherman*, No. 07 CIV. 1001 (WHP), 2008 WL 2156726, at *6 (S.D.N.Y. May 8,

2008) (to state claim for contribution under CPLR 1401, party against whom recovery is sought

must have contributed to and be liable for the "same injury" suffered by underlying plaintiff);

*Fashion Shop LLC v. Virtual Sales Grp. Corp.*, 525 F. Supp. 2d 436, 446 (S.D.N.Y. 2007)

(same). To the contrary, the Third Party Complaint denies that there was any misappropriation

injury, and posits an entirely different theory of harm than the Main Complaint, in the form of

Luke Allen's 2007 alleged frustration of an alleged business plan. TPC ¶¶ 12-13, 18 (Luke

Allen's acts in 2007 "interfered" with a plan to sell assets and eventually pay back the money

and therefore he "is to blame for his father's inability to recoup his investment."). As such, the

Third Party Complaint fails to state a claim for contribution.

### D. Dismissal of the Contribution Claim Compels Dismissal of the Remaining Causes of Action Pursuant to Fed. R. Civ. P. 18

Under Fed. R. Civ. P. 14(a), a third party complaint must set forth at least one claim that

is predicated on the third party defendant's "liab[ility] to [the third party plaintiff] for all or part

of the claim against it." Only then can supplemental claims against the same third party be

joined under Fed. R. Civ. P. 18. In the present case, contribution is the only cause of action in

the Third Party Complaint that could conceivably be a third party claim, since Devine's claims to

have been the victim of tortious interference and civil conspiracy by Allen and Luke Allen

plainly are not "secondary or derivative" of any alleged misconduct by Devine against Allen.

Because the contribution claim is not in fact a viable third party claim (*see supra* at 7-9) and

because it does not state a claim for contribution, dismissal of Count I therefore also warrants

dismissal of Counts II and III under Rule 18.

11

## POINT II

### THE TORTIOUS INTERFERENCE AND CIVIL CONSPIRACY CLAIMS FAIL TO STATE A CLAIM IN ANY EVENT

**A.      The Third Party Complaint Fails To State A Claim For Tortious Interference With Business Expectancy.**

Count II of the Third Party Complaint is labeled "tortious interference with business expectancy," and consists of a quintessential "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Devine pleads just five things: (i) a "relationship" with Allen; (ii) Luke Allen's knowledge; (iii) Luke Allen's "intentional interference" with "that relationship" through obtaining a guardianship and preliminary injunction, preventing sales of radio stations to third parties, and removing Devine from the management of Superior; (iv) that "Luke Allen acted solely out of malice and/or used wrongful means;" and (v) that "Luke Allen's interference caused injury to the relationship." *Cf. Friedman v Coldwater Creek, Inc.*, 321 F. App'x 58, 59-60 (2d Cir. 2009) (reciting same basic elements). This boilerplate litany of elements, however, does not suffice to state a claim.

*1.      Devine pleads neither wrongful means, nor malice.*

A defendant can only be liable for tortious interference with business expectancy where the interference either was accomplished through wrongful means, or was motivated solely by malice. *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 412 (S.D.N.Y. 2009) ("Plaintiffs cannot establish a claim for tortious interference with prospective business advantages unless the . . . Complaint alleges that [defendants] acted solely out of malice or otherwise used improper means.") (citation, internal quotation marks and footnote omitted), *aff'd*, 387 F. App'x 72 (2d Cir. 2010). The Third Party Complaint does not successfully plead any such conduct.

The facts alleged to constitute tortious interference are as follows: (1) "Luke Allen participated in a guardianship proceeding against his father, in which Luke Allen was appointed

as Guardian for the Property Management of Allen" (TPC ¶ 14); (2) "In the guardianship proceeding, Luke Allen obtained an injunction to prevent certain entities from selling radio stations") (*id.* ¶ 15); (3) "Using that injunction, Luke Allen scuttled potential sales or radio stations" (*id.* ¶ 16); and (4) "On September 19, 2007 [as a shareholder of Superior and Allen's guardian], Luke Allen had Devine removed from the management of Superior." *Id.* at ¶ 17. None of those alleged activities states a claim for tortious interference.

As a threshold matter, no facts are pleaded from which this Court could infer that participating in a guardianship constitutes "wrongful means." Devine admits (as he must) that Luke Allen did not commence the guardianship proceeding. Answer ¶ 66 (admitting that Grace commenced the Guardianship Proceeding). Apart from the pejorative characterization of the guardianship as a "conspiracy," the Third Party Complaint never suggests any act of wrongdoing by either Allen in connection with the guardianship proceedings. Nor does it ever explain why – if Allen wanted to breach some claimed agreement with Devine – he needed a guardian to do so.

Drawing inferences in favor of Devine that are not even warranted by the Third Party Complaint, there is only one way that pursuing judicial action could be actionable as tortious interference: If the litigation is a "sham." *See Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 355 (S.D.N.Y. 1997) ("[P]arties who maintain civil suits are entitled to immunity for doing so under the *Noerr-Pennington* doctrine of immunity so long as the litigation is not a 'sham.'") (footnote omitted) (citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993)). To qualify as a "sham," a judicial action or proceeding "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors*, 508 U.S. at 60.

13

Courts routinely resolve the issue of whether litigation was a "sham" at the pleading

stage. *See Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 102 (2d Cir. 1983)

(affirming dismissal because "the filing of a single non-sham lawsuit . . . cannot form the basis of

a claim [for] . . . . tortious interference with a business expectancy."); *see also Friends of*

*Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, 313 F. Supp. 2d 339, 342-43 (S.D.N.Y.

2004) (granting judgment on the pleadings to dismiss a claim for tortious interference with

prospective economic advantage); *Alfred Weissman Real Estate, Inc. v. Big V Supermarkets,*

*Inc.*, 268 A.D.2d 101, 110 (2d Dep't 2000) (affirming dismissal of tortious interference claims

based on finding that "the defendants are shielded from liability by the *Noerr-Pennington*

doctrine."). In the present case, the tortious interference claim should likewise be dismissed

because the guardianship plainly was not a "sham."

As a matter of law, the complained-of applications for appointment of a guardian and for

a preliminary injunction cannot have been objectively baseless, given that they were successful

and that Justice Asarch necessarily found that the standards for appointment of a guardian under

Section 81.02(a) of the Mental Hygiene Law and for issuance of an injunction under Mental

Hygiene Law § 81.23(b)(1) had been met. *See Professional Real Estate Investors*, 508 U.S. at

60 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and

therefore not a sham" under the *Noerr-Pennington* doctrine); *Alfred Weissman Real Estate,* 268

A.D.2d at 110 ("[B]y definition, an . . . ultimately successful effort to influence government

action cannot be considered a sham"); *see also Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342,

365 (S.D.N.Y. 2010) (if court determines that a litigation position has merit, it cannot be

"objectively baseless.").

Beyond the mere outcome, moreover, it cannot seriously be contended that Justice Asarch's orders lacked any objective basis. With regard to the guardianship (which, again, Luke Allen did not initiate) the Third Party Complaint never alleges that Justice Asarch's orders lacked objective support. The Devine Defendants acknowledge in their Counterclaims (which are incorporated by reference) that Allen consented to the guardianship (Counterclaims at ¶ 39), thus providing one objective statutory ground for appointment of a guardian. *See* N.Y. Mental Hygiene Law 81.02(a)(2). Further, the Court may take judicial notice that New York's Article 81 prescribes a statutorily required investigation and submission of a written report by an independent court evaluator before the appointment of any guardian. *See* N.Y. Mental Hygiene Law § 81.09; *see also* Law Revision Comments to N.Y. Mental Hygiene Law § 81.09 ("The court evaluator is intended to act as an independent investigator to gather information to aid the court in reaching a determination about the [alleged incapacitated] person's capacity, . . . and assigning the proper powers to the guardian, and selecting the guardian.").

With regard to the injunction, the state court's order reflects that

REDACTED

In sum, the guardianship and procurement of the preliminary injunction were not objectively baseless. Accordingly, they are

protected pursuant to the *Noerr-Pennington* doctrine and Devine cannot state a claim for tortious interference based on those activities.

An additional defect plagues two of the alleged acts pleaded to have been carried out by Luke Allen as guardian: "scuttl[ing] potential sales of radio stations" via the injunction, and "ha[ving] Devine removed from the management of Superior." TPC ¶¶ 16-17. Even assuming these acts were not immunized by the *Noerr-Pennington* doctrine, these alleged actions were directed at Devine and/or alleged possible purchasers of radio stations and not at Allen. *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004) ("[C]onduct constituting tortious interference with business relations is, by definition, directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship"); *accord Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 430 (S.D.N.Y. 2007) (same), *aff'd*, 336 F. App'x 21 (2d Cir. 2009); *Gruntal & Co. v. San Diego Bancorp*, No. 94 Civ. 5366 (DC), 1996 WL 343079, at *3 (S.D.N.Y. June 21, 1996) (same). Accordingly, even if not immune, these acts could not have constituted tortious interference with the Devine-Allen relationship.

### 2.    *The third party complaint alleges facts that rebut malice.*

Absent wrongful means, a legally sufficient claim for tortious interference with business expectancy requires that the defendant acted exclusively with malice. In the present case, this Court need not reach the issue of Luke Allen's intent with regard to the guardianship and acts taken pursuant thereto, because "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Professional Real Estate Investors*, 508 U.S. at 60.

Regardless, however, the allegation of malice is untenable. It is undisputed that Luke Allen did not commence the guardianship, so by definition he could not have done so maliciously. Once appointed guardian, Luke Allen had a "statutory duty" to protect Allen's

16

property interests, including by means of preserving assets. *See Turner v Borobio*, No. 01 CIV. 7458 (SAS), 2001 WL 1602965, at *3 (S.D.N.Y. Dec. 14, 2001) (explaining that Article 81 guardian has a "statutory duty" to "help to optimize, protect and preserve [the incapacitated person's] estate until he becomes competent."). For that reason, Luke Allen's obtaining an injunction to preserve Allen's assets cannot have been motivated "solely" by malice.

Further (though the material allegations of the Third Party Complaint are in no way conceded) even that pleading establishes that Luke Allen was not prompted "solely" by malice in removing Devine as President of Superior. Paragraph 8 of the Third Party Complaint quotes (and therefore necessarily incorporates by reference) a letter dated January 9, 2006, a complete copy of which is attached as Exhibit F to the Wald Decl. That letter refers to "the beneficiaries of the CR Allen Children's Trust," which according to the letter "owns 30 % of the stock of Superior" (together with Allen's 60 percent). As the beneficiary of a trust that owned shares of Superior, Luke Allen clearly had an economic interest in preventing further dissipation of monies from Superior, preventing fraud on that company, and in having a say in management. That economic interest negates the existence of malice. *See Hassan*, 515 F. Supp. 2d at 430 ("A motive of 'normal economic self-interest' is inconsistent with the sole purpose of inflicting intentional harm"); *Phillips v. Carter*, 58 A.D.3d 528 (1st Dep't 2009) (affirming dismissal of complaint where allegations showed financial dispute between parties).

### 3. The third party complaint fails to plead actionable "injury" or the required "but for" causation.

Beyond the bare use of the word "injury," Devine fails to allege, as he must, any lost contract or sale with Allen that were proximately caused by the alleged interference with his "business relationship." *See RSM Prod. Corp. v. Fridman*, 387 F. App'x 72, 74 (2d Cir. 2010) (dismissing for failure to plead plausible injury). To allege tortious interference with a business

17

relationship or expectancy, a plaintiff must plead more than just some generic "injury" to a vague "relationship." Instead, a complaint must identify specific contracts or sales that would have been obtained from the third party "but for" the defendant's interference.

For example, in *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 217 F. Supp. 2d 423 (S.D.N.Y. 2002), developers claimed that a rival tortiously interfered with their business relationship with a Native American tribe, causing the tribe to discontinue pursuit of government approvals for a joint casino venture. The developers argued that loss of their carefully cultivated relationship with the tribe satisfied the element of "injury." The court rejected that argument as contrary to settled law, reaffirming the governing rule that the plaintiffs "must show that they would have consummated their proposed business transaction with the Tribe and opened a casino . . . but for [Defendant's] alleged wrongful conduct." *Id.* at 440; *see also Kahn v. Salomon Bros. Inc.*, 813 F. Supp. 191, 195 (E.D.N.Y. 1993) (shareholder's allegation that defendants "prevented [a company] from continuing and entering into business relationships with actual and prospective customers for Two-Year Treasuries" insufficient to state a claim, as the plaintiff shareholder "[did] not allege that any particular business relationship between [the corporation] and its customers was prevented or discontinued"); *Vigoda v DCA Prods. Plus Inc.*, 293 A.D.2d 265, 266-67 (1st Dep't 2002) (reversing trial court's denial of motion to dismiss due to plaintiff's failure to specify a contract, and resultant lack of the "'but for' causation required by this tort"); *American Preferred Prescription, Inc. v. Health Mgmt., Inc.*, 252 A.D.2d 414, 419 (1st Dep't 1998) (dismissing claim for tortious interference with business relationship based on failure to plead that plaintiff would have entered into contract with third party "but for" defendants' interference with third party). In the present case, Count II should be dismissed since the Third

Party Complaint does not plead the loss of any specific contract or sale into which Devine would have entered with Allen "but for" Luke Allen.

Not only does the Third Party Complaint fail to plead "but for" causation, it incorporates facts that actually *negate* causation and warrant dismissal. "Once a plaintiff alleges facts . . . establishing that the breaching party was predisposed toward breaching its agreement, the claim for tortious interference must be dismissed for failure to plead 'but for' causation." *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 293-94 (S.D.N.Y. 1998). Such facts are alleged in the present case.

Devine's fraud counterclaim against Allen is expressly incorporated by reference into the Third Party Complaint. TPC ¶ 31. The counterclaim alleges that at all times Allen had a plan to dishonor his relationship with Devine. *See* Counterclaims ¶¶ 34-35 (alleging that Allen defrauded Devine into taking $70 million from Allen, pursuant to a pre-existing plot by Allen that "[i]f the radio stations failed to make money, or if [Allen] was not able to recoup his investment quickly, [Allen] planned to accuse Devine of using his money without his knowledge and consent to purchase radio stations outside of Superior"); *id.* at ¶¶ 38-39 (alleging that Allen "executed his plan" by "consent[ing] to a guardianship"). However dubious this scenario, the tortious interference claim fails as a result of Devine's own pleading that Allen was predisposed to breach from the start. *See RSM Prod. Corp.*, 643 F. Supp. 2d at 410 ("If a defendant can demonstrate that the third-party was predisposed toward breaching the contract even in the absence of the alleged interference, a plaintiff cannot establish 'but for' causation.").

In addition, the Third Party Complaint never explains how cessation of a Devine-Allen "business relationship," either by guardianship or removal of Devine as a Superior corporate officer, resulted in any loss to Devine. Devine does not and could not allege that he had a

19

perpetual right to be President of Superior. To the extent it can be inferred that Devine claims

some loss because side deals for unnamed other LLCs fell through, such personally interested

deals would have been a direct conflict of interest with Devine's fiduciary duties to Superior and

its shareholders. *See, e.g., Foley v. D'Agostino*, 21 A.D.2d 60, 66-67 (1st Dep't 1964); *Andarko*

*Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171, 1174 (Del. 1988). Loss of an

ability to dispose of Allen's monies free of any judicial oversight, or to profit personally from

side deals as an officer and director of Superior does not constitute actionable damages.

> 4. *Luke Allen cannot have tortiously interfered with an Allen-*
> *Devine relationship.*

The Third Party Complaint alleges that Luke Allen interfered with the Devine-Allen

relationship in his capacity as Allen's guardian. In that capacity, however, Luke Allen stood in

the shoes of Allen himself. *See Turner, supra*, 2001 WL 1602965 at *3 (explaining that Article

81 guardian of property management under New York law "stand[s] in [the incapacitated

person's] shoes"). It is black letter law that a party cannot tortiously interfere with its own

contract or business relation. *See, e.g., Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996)

("[A] plaintiff bringing a tortious interference claim must show that the defendants were *not*

*parties to the contract*.") (emphasis in original); *Steinberg v. Schnapp*, 73 A.D.3d 171, 175 (1st

Dep't 2010) (same). Consequently, Luke Allen cannot have "tortiously interfered" with a

business relationship to which Allen was a party.

Indeed, Devine's effort to retaliate against Luke Allen in his individual capacity for acts

taken as guardian runs afoul of public policy. Given the goals of the guardianship procedure to

"help to optimize, protect and preserve [the incapacitated person's] estate until he becomes

competent," *Turner*, 2001 WL 1602965, at *3, it should not be a basis for individual liability that

a guardian has done precisely that. *See Skolnick v Goldberg*, 291 A.D.2d 274, 275 (1st Dep't

2002) (holding guardian could not be sued personally, by defendant in action she brought to recover for breach of fiduciary duty and misrepresentation to ward, for indemnification of costs incurred in defending that action, since guardian in bringing action necessarily acted as representative and pursuant to a statutory mandate to recover assets).

**B.   The Civil Conspiracy Claim Fails To State A Claim.**

*1.   Devine has no viable claim for an underlying tort.*

"New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citing *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968 (1986)). To state a claim for civil conspiracy, "the [plaintiff] must demonstrate [a] primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *World Wrestling Fed'n Entmt, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001).

Civil conspiracy claims are routinely dismissed for lack of a viable primary underlying tort. *See Kirch*, 449 F.3d at 401 ("[S]ince ITTC fails to state causes of action for either of the torts underlying the alleged conspiracy, defamation or tortious interference with prospective economic advantage, it necessarily fails to state an actionable claim for civil conspiracy."); *accord Anderson News, L.L.C. v. American Media, Inc.*, 732 F. Supp. 2d 389, 405 (S.D.N.Y. 2010) ("Having failed to state a claim for any underlying tort, the Complaint fails to adequately plead a civil conspiracy under New York law").

Here, there is no viable claim for any underlying tort on which the putative conspiracy claim against Luke Allen can be based. The claim for tortious interference with business expectancy (Count II) fails for the reasons discussed *supra*. Likewise, while Devine alleges that "[t]he conspiracy was carried out by means of fraudulent acts by the Conspiracy Defendants

21

[Luke Allen and Allen]" (TPC ¶ 31), and while Devine's Counterclaims against Allen purport to assert a fraud claim against Allen (Count II of the counterclaims, at ¶¶ 19-40), that fraud counterclaim is subject to dismissal under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

*First,* the fraud claim, which seeks damages against Allen, is no longer within this Court's subject matter jurisdiction.  In the wake of Mr. Allen's passing, the counterclaim filed prior to his death became a claim against his estate. *See* 27A Carmody-Wait 2d New York Practice § 159:3 ("Any debt or claim that could have been enforced against a decedent during his or her lifetime is a debt or claim against the decedent's estate").  Accordingly, the damages sought are claimed against estate assets.  Such a claim falls squarely within the "probate exception" to federal subject matter jurisdiction. *See Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.*").

"Among longstanding limitations on federal jurisdiction otherwise properly exercised are the so-called . . . 'probate' exception[]." *Marshall v. Marshall,* 547 U.S. 293, 299 (2006).  That exception, *inter alia,* "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* at 312.  This necessarily precludes a claim (such as Devine's fraud counterclaim) for money damages against an estate. *See Kennedy v. Trustees of Testamentary Trust of Will of Kennedy,* 2010 WL 4250155, at *1 (2d Cir. Oct. 28, 2010) (noting that the exception "applie[s] to claims in which the plaintiff [seeks] in essence, disgorgement of funds that remain under the control of the Probate Court") (citation and internal quotation marks omitted); *Carvel v. Carvel Found. Inc.,* 230 F. App'x 103, 104 (2d Cir. 2007) (affirming dismissal of action to confirm foreign judgment against estate, as the action "endeavor[ed] to dispose of property that is in the custody of a state probate court") (citation and internal

22

quotation marks omitted); *Groman v. Cola*, No. 07 Civ. 2635 (RPP), 2007 WL 3340922, at *6

(S.D.N.Y. Nov. 7, 2007) (applying probate exception to defendant's counterclaims that sought

"the distribution of sums in the possession of the Estate"; court noted that "the counterclaims

require this Court to assert control over property that remains under the control of the state

court") (citation and internal quotation marks omitted).

      Because the fraud counterclaim seeks a distribution of property that is under the control

of the probate court, it cannot properly remain in federal court.  Consequently it cannot form the

underlying tort needed to sustain a third party civil conspiracy claim against Luke Allen.

            2.   *The counterclaim fails to state a claim for fraud.*

      The Court's page limits do not permit a comprehensive discussion of all the grounds

upon which the fraud counterclaim should be dismissed under Fed. R. Civ. P. 12(b)(6) in the

scope of this motion to dismiss.  A brief discussion is provided, and counsel would be glad to

supply additional briefing on this issue should the Court wish.

      Count II of the Counterclaim titled "Fraud," alleges that between 2000 and 2006 Allen

made oral statements to Devine that (as pleaded) appear verbatim "in the contract" that is sought

to be enforced in the contract claim set forth in Count I (Counterclaim ¶¶ 25-28; *cf.* also ¶¶ 12,

23), which contract is pleaded to cover all aspects of the Allen-Devine "business relationship."

*Id.* at 12. The statements were also made in "Non Recourse Notes" which Allen allegedly stated

would "serve as the documentation for all prior loans that Plaintiff made to Superior," and which

provided that Devine's only obligation to repay Allen would arise at such time as Devine chose,

if ever, to sell a membership interest in an LLC. *Id.* at ¶¶ 31-32.  The claim goes on to allege

that "All of Plaintiff's statements above were material misrepresentations of material fact made

with knowledge of their falsity and with intent to defraud Devine," and that the

misrepresentations were made to "induce Devine to form companies, hire employees, make

agreements with other lenders and partners, and to purchase radio stations [for his own companies rather than for entities in which Allen had an interest]." *Id.* at ¶ 35. In reliance on the fraud, Devine alleges, he conducted the businesses so they would be profitable. *Id.* at ¶ 36.

Thus, the Counterclaim explicitly styles itself as a claim for fraud based entirely on allegedly false statements contained in, or directly about the subject matter, of oral and written contracts. Even if it were possible to eke out some unstated claim that Allen lacked a present intent to honor the agreements, such allegations do not state a claim for fraud. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996) (fraud claim cannot mirror contract absent independent duty, collateral or extraneous representation, or special damages); *Pacs Indus., Inc. v. Cutler-Hammer, Inc.*, 103 F. Supp. 2d 570, 572 (E.D.N.Y. 2000) (fraud claim cannot be based on breach of contract "unless a legal duty independent of the contract itself has been violated"). Here, because at least one of the agreements is alleged by Devine to govern any and all dealings related to the Allen-Devine "business relationship," Counterclaim at ¶ 12, and both contracts are claimed to specifically govern Superior, there can be no duty that is "independent," nor any statement that would be "collateral or extraneous."

Nor does the Third Party Complaint sufficiently plead either scienter or motive as required under Rule 9(b), which requires a plaintiff to plead facts giving rise to a "strong inference of intent." *See Shields v Citytrust Bancorp, Inc.*, 25 F. 3d 1124, 1128 (2d Cir. 1994). As to scienter, all that is alleged is that Allen has sued Devine to recover his monies on a variety of equitable and legal grounds, and refused to indemnify Devine for fraud and other wrongdoing toward Allen himself and others pursuant to various equitable and legal defenses, which does not establish intent to defraud. As to motive, motive involves "concrete benefits," and "to determine whether motive is adequately alleged, courts must "assume that the defendant is acting

24

in his or her informed economic self-interest." *Id.*  It is unfathomable how it could be in Allen's economic self-interest to deceive one who otherwise would owe Superior and Allen the highest duties of loyalty and care as a fiduciary into taking $70 million unhampered by such duties, as alleged. *At most*, Allen's upside from the scheme is alleged to be that -- after giving away nearly $70 million with no strings attached for the express purpose of a risky investment pursuant to which Devine would "invest" the money in his own entities and assets in which Allen had no security or right of recovery – Allen would have an option to expend legal fees to try to recover his out of pocket losses from Devine – who is not alleged to ever have had $70 million of his own with which to repay Allen.  Counterclaim ¶ 35.  This is hardly a "concrete benefit" or in Allen's "economic self interest."  Indeed, even accepting Devine's allegations, it would seem from a relative standpoint to be far more in Devine's "economic self- interest" than in Allen's to take $67 plus million, use it to fund business dealings and borrowings for companies in which Devine (unlike Allen) had an ownership interest, and pay nothing back until the day of judgment. This is especially true where the only "reliance" on the claimed fraud is claimed to have been an effort to run Devine's own businesses for profit, Counterclaim ¶¶ 35-36, which effort left Devine, unlike Allen, with actual businesses and radio stations. *Id.*

       3.    *A party cannot conspire with itself.*

Since Luke Allen stood in the shoes of Allen by virtue of the guardianship (*see Turner v. Borobio, supra*, 2001 WL 1602965), the contention that Luke Allen conspired with Allen is tantamount to asserting that Allen conspired with himself.  However, "[i]t is a tenet basic to our law that no one may conspire with himself . . . ." *Lewis v. Friedman-Marks Clothing Co.*, 70 A.D.2d 866, 866 (1st Dep't 1979) (reversing trial court's refusal to dismiss conspiracy claim). For that reason alone, the Third Party Complaint fails to state a claim for civil conspiracy.

## CONCLUSION

For the foregoing reasons, Luke Allen respectfully requests that this Court dismiss the third-party complaint with prejudice in its entirety.

Dated: May 2, 2011
      New York, New York

**COHEN & GRESSER LLP**

By:        /s/
    Alexandra Wald
    awald@cohengresser.com
    Nathaniel P.T. Read
    nread@cohengresser.com
    Harvey B. Silikovitz
    hsilikovitz@cohengresser.com
    800 Third Avenue, 21st Floor
    New York, New York 10022
    (212) 957-7600

*Attorneys for Third-Party Defendant Luke Allen*