UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THE ESTATE OF C. ROBERT ALLEN, III, by its Executrix,
GRACE M. ALLEN,

                                     Plaintiff,                    MEMORANDUM
                                                                OPINION AND ORDER

                         -against-                          CV 09-0668 (ETB)

CHRISTOPHER DEVINE, LAKESHORE MEDIA, LLC
MILLCREEK BROADCASTING LLC, COLLEGE CREEK
MEDIA LLC, MARATHON MEDIA GROUP, LLC, 3 POINT
MEDIA - SALT LAKE CITY, LLC, 3 POINT MEDIA DELTA,
LLC, 3 POINT MEDIA - UTAH, LLC, 3 POINT MEDIA -
FRANKLIN, LLC, 3 POINT MEDIA - PRESCOTT VALLEY,
LLC, 3 POINT MEDIA - COALVILLE, LLC, 3 POINT
MEDIA - ARIZONA, LLC, 3 POINT MEDIA - FLORIDA,
LLC, 3 POINT MEDIA - KANSAS, LLC, 3 POINT MEDIA -
OGDEN, LLC, 3 POINT MEDIA - SAN FRANCISCO, LLC,
MIDVALLEY RADIO PARTNERS, LLC, D&B TOWERS LLC,
SUPERIOR BROADCASTING OF NEVADA, LLC,
SUPERIOR BROADCASTING OF DENVER, LLC,
WACKENBURG ASSOCIATES, LLC, PORTLAND
BROADCASTING LLC, DESERT SKY MEDIA LLC, SKY
MEDIA LLC, DEVINE RACING MANAGEMENT, LLC,
ACB CONSULTING CO., and John Does 1-50,

                                      Defendants.

------------------------------------------------------------------------X

        Before the Court is the defendants' motion for partial summary judgment, pursuant to

Federal Rule of Civil Procedure 56.  Plaintiff opposes the motion on the grounds that there are

numerous issues of fact that necessitate a trial in this action.  For the following reasons,

defendants' motion is denied in its entirety.

<u>FACTS</u>

This action arises out of an alleged scheme by defendant/counter-plaintiff, Christopher Devine ("Devine"), former defendant Bruce Buzil ("Buzil")[1], and a network of corporate entities under their control - Lakeshore Media, LLC, Millcreek Broadcasting LLC, College Creed Media LLC, Marathon Media Group, LLC, 3 Point Media - Salt Lake City, LLC, 3 Point Media Delta, LLC, 3 Point Media - Utah, LLC, 3 Point Media - Franklin, LLC, 3 Point Media - Prescott Valley, LLC, 3 Point Media - Coalville, LLC, 3 Point Media - Arizona, LLC, 3 Point Media - Florida, LLC, 3 Point Media - Kansas, LLC, 3 Point Media - Ogden, LLC, 3 Point Media - San Francisco, LLC, Midvalley Radio Partners, LLC, Superior Broadcasting of Nevada, LLC, Superior Broadcasting of Denver, LLC, Wackenburg Associates, LLC, Portland Broadcasting LLC, Desert Sky Media, LLC, Sky Media LLC (collectively, the "LLC's") and ACB Consulting Co., - all named as defendants herein (collectively, the "Devine Defendants"), to misappropriate funds from  C. Robert Allen ("Allen"), now deceased, through a pattern of fraud and deceit. (Am. Compl. ¶ 1.)

According to the Amended Complaint, starting in about 2000, Devine and Buzil induced Allen to make a series of loans to Superior Broadcasting Co. ("Superior"), a company defendants held out as owning multiple radio stations and seeking to acquire more.  (Am. Compl. ¶¶ 4-5.) Allegedly, Superior was nothing more than a shell company, through which Devine and Buzil filtered Allen's money to other entities controlled by them and in which Allen held no interest. (Am. Compl. ¶¶ 6-7.)

---

[1]  The claims against Bruce Buzil were dismissed by Memorandum of Decision and Order of Judge Spatt, the district judge formerly assigned to this case, on July 24, 2010, due to lack of personal jurisdiction.  (Mem. of Decision and Order of Spatt, J., dated July 24, 2010, 22-29.)

In February 2007, as a result of Allen's deteriorating mental status, Allen's wife commenced a guardianship proceeding with respect to Allen's property.  (Am. Compl. ¶ 66.)  In March 2008, Allen's son, Luke Allen ("Luke"), was appointed as Guardian for Allen's property.  (Am. Compl. ¶ 67.)  In his capacity as Guardian, Luke commenced the within action, alleging RICO violations, fraud, civil conspiracy, conversion, unjust enrichment, and breach of fiduciary duty.[2]  (Def. R. 56.1 Statement ("Def. 56.1") ¶ 1.)

The Devine Defendants make three arguments in support of their motion for partial summary judgment.  First, they argue that plaintiff is barred from pursuing the remaining claims in the Amended Complaint[3] by the doctrine of collateral estoppel in that the claims in the Amended Complaint all hinge on four issues that were previously decided against plaintiff in a closely-related prior action in New York Supreme Court, Nassau County, entitled Excelsior

---

[2]  Allen passed away in 2011 and in the probate proceeding currently pending in New York Surrogate's Court, Nassau County, Allen's wife, Grace M. Allen ("Grace"), was appointed as the Executrix of Allen's estate (the "Estate").  (Def. 56.1 ¶ 2.)  On October 25, 2011, the Court granted Devine's motion to substitute, and the Estate of C. Robert Allen, III, by its Executrix, Grace M. Allen, was named as the plaintiff herein in place of Luke.  (Def. 56.1 ¶ 3.)

[3]  The remaining claims in the Amended Complaint are as follows: (1) civil RICO, pursuant to 18 U.S.C. § 1962(c) (alleged solely against Devine); (2) RICO conspiracy (alleged solely against Devine); (3) common law fraud (alleged solely against Devine); (4) civil conspiracy (alleged against Devine, the LLC's, Devine Racing Management LLC, ACB Consulting and John Does 1-50); (5) conversion (alleged against Devine, the LLC's, Devine Racing Management LLC, ACB Consulting and John Does 1-50); (6) unjust enrichment (alleged against Devine, the LLC's, Devine Racing Management LLC, ACB Consulting and John Does 1-50); and (7) breach of fiduciary duty (alleged solely against Devine).  Plaintiff's claims for a violation of 18 U.S.C. § 1962(a) and a constructive trust, as well as its request for injunctive, relief were previously dismissed by Judge Spatt.  See Allen v. Devine, 726 F. Supp. 2d 240, 258 (E.D.N.Y. 2010).

-3-

Capital, LLC v. Superior Broadcasting Company, Inc., Index No. 08289/07.[4]  Second, the Devine

Defendants assert that even if the Court finds that collateral estoppel does not apply here, the

undisputed facts demonstrate that plaintiff cannot meet its burden of proof to support its claims.

Finally, the Devine Defendants argue that Devine is entitled to summary judgment as to liability

on Count I of his counterclaim for breach of contract due to the existence of an indemnity

agreement between Allen and Devine.


DISCUSSION

I.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

burden is on the moving party to establish the lack of any factual issues.  See Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  The very language of this standard reveals that an otherwise

properly supported motion for summary judgment will not be defeated because of the mere

existence of some alleged factual dispute between the parties.  See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247 (1986).  Rather, the requirement is that there be no "genuine issue of

material fact."  Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most

favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

---

[4]  Because the Devine Defendants rely primarily on collateral estoppel as the basis for this
motion, their Local Civil Rule 56.1 Statement of Undisputed Facts pertains mainly to the issues
raised and decided in the prior state court action.  The Devine Defendants' 56.1 Statement
contains very few statements of fact pertaining to the dispute herein between plaintiff and
themselves and therefore, is largely unhelpful to the Court in deciding the within motion.

U.S. 574, 588 (1986).  When the moving party has carried its burden, the party opposing

summary judgment must do more than simply show that "there is some metaphysical doubt as to

the material facts."  Id. at 586.  In addition, the party opposing the motion "may not rest upon the

mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is

a genuine issue for trial."  Anderson, 477 U.S. at 248.

      When considering a motion for summary judgment, the district court "must also be

'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens

that the respective parties will bear at trial guide district courts in their determination of summary

judgment motions."  SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady

v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted).  "Where

the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on

the moving party is satisfied if he can point to an absence of evidence to support an essential

element of the non-movant's claim."  Meltzer, 440 F. Supp. 2d at 187.

      Summary judgment should not be regarded as a procedural shortcut, but rather as an

integral part of the Federal Rules of Civil Procedure, which are designed to "secure the just,

speedy and inexpensive determination of every action."  Celotex, 477 U.S. at 327.  Rule 56 must

be "construed with due regard not only for the rights of persons asserting claims and defenses

that are adequately based in fact to have those claims and defenses tried to a jury," but also for

the rights of those persons "opposing such claims and defenses to demonstrate, . . . prior to trial,

that the claims and defenses have no factual basis."  Id.  By its terms, Rule 56 does not require

that a trial judge make any findings of fact.  See Anderson, 477 U.S. at 250.  The only inquiry to

be performed is the determination of whether there is a need for trial.  See id.  The court's

principal analysis on a motion for summary judgment is to ascertain whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id.

II.    Collateral Estoppel

The Devine Defendants assert that they are entitled to summary judgment on the remaining causes of action contained in the Amended Complaint because plaintiff is barred from pursuing the claims by the doctrine of collateral estoppel.  According to the Devine Defendants, all of the remaining claims "hinge on four issues that were decided against the Estate in a closely-related prior action, Excelsior Capital, LLC v. Superior Broadcasting Company, Inc., Index No. 08289/07 (N.Y. Sup. Ct.), in which Excelsior Capital, LLC sued Superior and Allen for breach of promissory notes and Allen's personal guarantees of certain of those notes."  (Def. Mem. of Law 5.)

Collateral estoppel, or issue preclusion, refers to the preclusive effect of a judgment that prevents a party from relitigating an issue of fact or law that has already been decided.  See Yeiser v. GMAC Mortgage Corp., 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) (citing Deutsch v. Integrated Barter Int'l, Inc., 700 F. Supp. 194, 196 (S.D.N.Y. 1988)) (additional citation omitted). For the doctrine to apply under New York law, a court must find that the issue was "necessarily decided" in the prior suit and that the plaintiff had a "full and fair opportunity" to litigate the issue.  Yeiser, 535 F. Supp. 2d at 424 (citing Buechel v. Bain, 97 N.Y.2d 295, 304-05 (2001)); see also Schuh v. Druckman & Sinel, LLP, 602 F. Supp. 2d 454, 468 (S.D.N.Y.  2009) (citing cases).  Whether an issue was "necessarily decided" turns on whether the court made a

-6-

determination as to the "rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." Yeiser, 535 F. Supp. 2d at 424–25 (citing Coveal v. Consumer Home Mortgage, Inc., No. 04-CV-4755, 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005)). Whether a party has had a "full and fair opportunity to be heard," however, requires consideration of "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." Yeiser, 535 F. Supp. 2d 413 at 425 (dismissing pro se plaintiffs' complaint on grounds of collateral estoppel where plaintiffs had full and fair opportunity to be heard in previous action despite their failure to interpose counterclaims, join parties and notice evidence of mortgagee's alleged fraud) (citing Schwartz v. Public Adm'r., 298 N.Y.2d 955, 961 (1969)).

The prior action on which the Devine Defendants base their argument involved a lawsuit for the enforcement of certain personal guarantees, breach of contract and unjust enrichment by an entity known as Excelsior Capital, LLC ("Excelsior") and its principal, Richard Davis ("Davis") - neither of whom are parties to the within action - against Superior and Allen based, in part, on three promissory notes between Excelsior and Superior that Allen had personally guaranteed between 2002 and 2004, totaling $13 million. (Def. Ex. F, ¶¶ 5-8.) Upon a motion by Allen at the conclusion of the trial, the court dismissed the action against Allen based on his personal guarantees on the grounds that there was no evidence that Allen had consented to modifications of the underlying notes between Davis, on behalf of Excelsior, and Devine, on

behalf of Superior, that resulted in extensions of the maturity dates of the three notes.[5]  (Def. Ex. L at 1790-91.)  The jury rendered a verdict in favor of Excelsior with respect to its breach of contract claims and a judgment was entered against Superior in the amount of $566,674.81. (Def. Ex. O.)

On appeal, the Appellate Division reversed the dismissal of the action against Allen based on his personal guarantees, holding that "the evidence presented at trial provided a rational basis upon which the jury could have found that Allen . . . did in fact consent to the extensions." Excelsior Capital, LLC v. Superior Broadcasting Co., Inc., 918 N.Y.S.2d 148, 151 (2d Dep't 2011).  The matter was remanded to the supreme court and a second trial was conducted in August and September 2011.  (Def. Ex. Q-T.)

At the conclusion of the second trial, the jury found in favor of Excelsior and against the Estate, which was substituted as plaintiff after Allen passed away.  (Def. Ex. U.)  The jury awarded Excelsior over $25,000,000, which represented the amounts due and owing on the three promissory notes personally guaranteed by Allen, as well as interest.  (Def. Ex. U.)  Upon appeal, the Second Department affirmed the jury's verdict and award.  See Excelsior Capital, LLC v. Superior Broadcasting Co., Inc., 955 N.Y.S.2d 196, 198 (2d Dep't 2012).

According to the Devine Defendants, the remaining claims in this action hinge on the following four issues, which they assert have already been decided against plaintiff in the prior state court actions: (1) whether Allen's mental capacity was diminished; (2) whether Devine

---

[5]  Neither Devine nor any of the corporate entities under his control that are named as defendants herein - other than Superior - were parties to the prior state court action.  The action by Excelsior and Davis was brought solely against Superior and Allen.

defrauded Allen in that Superior was nothing more than an invalid shell company; (3) whether Devine used Allen's money to pay back the loans to Davis that Allen had guaranteed; and (4) whether Devine had undue influence over Allen.  While it appears from a review of the trial transcripts provided that all of these issues were explored in witness testimony during the prior two state court trials, the Court finds that none of the issues asserted by the Devine Defendants were actually decided in the prior action.

The jury's verdict in the first state court action was limited to whether Superior breached the promissory notes provided to Excelsior.  (Def. Ex. O.)  In addition, the court in that action rendered a directed verdict regarding the personal guarantees executed by Allen and rendered a decision in favor of Superior with respect to Excelsior's unjust enrichment claims.  (Id.)  With respect to the retrial - after the remand by the Appellate Division - the jury's verdict was limited to whether the three promissory notes at issue in the action - between Excelsior and Superior - were modified and, if so, whether they were modified without Allen's consent.  (McCormick Decl., Ex. 14 at 1711, 1727-28.)  Nothing in the prior jury verdicts or judgments speaks to Allen's capacity, fraud, or undue influence.  While these issues may have played a role in the prior state court actions, there is no indication that any of them were "necessarily decided" in those actions.

Specifically, with respect to the diminished capacity and undue influence claims, the Devine Defendants assert that since the state court jury found that Allen had the capacity to duly sign personal guarantees in 2004 and to subsequently consent to modifications of the underlying notes, he was not susceptible to undue influence, rendering this issue as already decided against plaintiff herein.  (Def. Mem. of Law 5-8.)  However, Allen's mental state was not an issue

-9-

decided by the jury in the state court action.  In fact, when jurors in the state court action attempted to raise questions concerning Allen's mental capacity, the trial judge specifically instructed the jury that "[f]or our purposes in this case, there is no claim here that Mr. Allen's physical or mental abilities are related to any defense that is being raised by the defendants to the claims made by the plaintiffs."  (Def. Ex. EE at 1133-34.)  Accordingly, collateral estoppel does not prevent this issue from being litigated in the within action.

The Devine Defendants also assert that the issue of whether Devine defrauded Allen was already decided in the prior action against the plaintiff.[6]  According to the Devine Defendants, the state court jury found that Superior was a valid corporation that could, and did, execute promissory notes, and therefore, plaintiff's claims herein that Superior was nothing more than an invalid shell company are preclude by collateral estoppel.  (Def. Mem. of Law 6.)  However, while there was much testimony concerning Devine's alleged misstatements to Allen, whether Devine defrauded Allen was never an issue presented to the jury in the state court action.  In fact, the trial judge specifically instructed the jury that "[t]here [was] no fraud theory in the complaint or any of the defenses at [that] point in time."  (Def. Ex. N at 1849.)  Accordingly, collateral estoppel does not prevent the litigation of this issue herein.

While the Devine Defendants go to great lengths to make the within action appear to be the same as the previously litigated state court action, it is not.  The crux of this action is whether Devine defrauded Allen through his actions and representations concerning Superior and the purchase of radio stations.  The state court action centered around Allen's alleged personal

_____

[6]  The fraud issue encompasses both Superior's validity as well as whether Devine used Allen's money to repay the loans owed to Davis.

-10-

guarantees of certain notes between Superior and Davis, through his company, Excelsior, neither of whom are even parties to the instant action.  Nor are those notes and guarantees at issue in this action.  Accordingly, for the reasons set forth above, the Court finds that collateral estoppel does not prevent the litigation of any of the remaining pending claims and that portion of the Devine Defendants' motion for summary judgment is denied.

III.   Plaintiff's Burden of Proof

The Devine Defendants next argue that the undisputed material facts "demonstrate that the Estate cannot meet its burden of proof" herein because the deposition testimony of both Grace Allen and Luke Allen indicates that neither of them have personal knowledge of the facts supporting the Amended Complaint.  (Def. Mem. of Law 8.)  This argument is completely devoid of merit.  Both plaintiff and defendants herein have provided ample evidence from which an objective trier of fact could find for either side.  As such, there are substantial issues of fact that prevent summary judgment from being entered in this action.  The Devine Defendants' motion for summary judgment with respect to this point is therefore denied.

IV.   Devine's Counterclaim for Breach of Contract

Finally, the Devine Defendants request summary judgment as to liability only on Count I of their counterclaim, which seeks damages for plaintiff's breach of a contract under which Allen allegedly agreed to indemnify and hold Devine harmless if Devine is sued based on a challenge to the business relationship between Allen and Devine.  (Def. Ex. BB.)  This alleged contract is memorialized in a letter purportedly signed by Allen dated January 9, 2006, in which Allen states

-11-

as follows:

> To the extent that any third party or any persons allegedly acting in my name or on my behalf subsequently challenges either the structure of the transaction between Major[7] and Superior, the business relationship with Devine particularly as to the prior loans and investments, attempts to create personal liability for Devine (except for his failure to comply with his obligations to Superior pursuant to the Documents), and makes any claims or demands against Robert E. Neiman, Greenberg Traurig, LLP, Robert Wessely, Arnold & Porter, LLP, the management, including the officers, directors, agents and representatives of both Major and Superior, and Devine (the "Protected Parties"), I herewith agree to indemnify and hold harmless the Protected Parties and each of them from any such claim and demand, including without limitation, all costs and attorney's fees and shall advance or cause to be advanced sums on a bimonthly basis incurred in defense or resolution of such claims or demands. This obligation shall be binding on my estate and is not just personal and therefore is binding on my heirs, legatees, successors, and assigns. I am providing the indemnification to the Protected Parties because I recognize that this transaction and my business practices with Devine are unconventional. The lack of convention has created risks for the Protected Parties. I want to protect each and all of the Protected Parties from any challenge or cost for carrying out or having carried out my instructions.

(Def. Ex. BB at 2.)  According to the Devine Defendants, the undisputed language of this alleged contract entitles Devine to a judgment as a matter of law on his breach of contract counterclaim.

Conversely, plaintiff argues that there are several material issues of fact surrounding the January 2006 letter, including (1) the circumstances giving rise to the letter; (2) whether the letter was procured by fraud; and (3) whether the enumerated condition precedent was satisfied to trigger the indemnification obligation.  (Pl. Mem. of Law in Opp'n 15.)

---

[7] This reference is to Major Music, Inc., also known as Major Broadcasting Music, an entity that Allen owned.  (Def. Ex. BB at 1.)  The January 9, 2006 letter also served to document the purchase by Superior of 14 Class A Preferred Shares of Major Music owned by the CR Allen '65 Trust for the sum of $14,000,000.  (Id.)

The most substantial issue of fact here appears to be whether Allen even signed the January 2006 letter and, if so, whether his signature was procured by fraud.  The Devine Defendants assert that "[t]here can be no dispute that Bob Allen signed the contract."  (Def. Mem. of Law 13).  Plaintiff points out, however, that when questioned about the indemnification agreement in the prior state court action, although Allen identified the signature as "look[ing] like" his, (Def. Ex. K at 844, 854-55), he went on to state that he did not recognize "that paragraph where [he] indemnified everybody."  (Def. Ex. K at 855.)  Specifically, Allen stated that such an indemnification provision "just doesn't make sense," and further stated "I recognize no part of this document that I gave any indemnification to anybody."  (Id.)

In addition, Robert Wessely ("Wessely"), Allen's attorney, who is referenced in the January 2006 letter, testified at his deposition that he has he has no personal knowledge that Allen ever signed the indemnification agreement.  (Def. Ex. CC at 68.)  Robert Neiman ("Neiman"), Devine's former attorney and the drafter of the January 2006 letter, also testified at his deposition that he was originally informed by Wessely that Allen had not signed the indemnification agreement and that, months later, Wessely advised him that Allen had indeed signed the agreement.  (McCormick Decl., Ex. 5 at 54.)  Almost one year later, in an email dated December 29, 2006, Neiman wrote to Wessely that he was "now told that the indemnification may not have been signed" by Allen.  (McCormick Decl., Ex. 17.)

Moreover, there appear to be numerous versions of the January 2006 letter, with some versions bearing dates in February 2006.  (McCormick Decl., Ex. 18.)  While the Devine Defendants assert that the January 9, 2006 letter is the final binding version of the purported indemnification agreement, it appears that any such agreement may still have been the subject of

-13-

negotiations subsequent to January 9, 2006.  Accordingly, for the foregoing reasons, the Court

finds that there are genuine issues of fact that preclude summary judgment from being entered

with respect to Devine's counterclaim for breach of contract.


<u>CONCLUSION</u>

For the foregoing reasons, the Devine Defendants' motion for partial summary judgment

is denied in its entirety.


**SO ORDERED:**

Dated:  Central Islip, New York
        July 11, 2013

                                        /s/ E. Thomas Boyle
                                        E. THOMAS BOYLE
                                        United States Magistrate Judge